249 So.2d 560

**STATE of Louisiana, Appellee,**

v.

**Terry Lee AMPHY, Appellant.**

No. 50897.

June 7, 1971.

J. Carl Parkerson, Monroe, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Robert W. Kostelka, Dist. Atty., for plaintiff-appellee.

TATE, Justice.

The defendant was convicted of aggravated rape, La.R.S. 14:42, and sentenced to life imprisonment.

The principal errors contended as a basis for reversal concern: 1. The composition and selection of the grand jury, of the petit jury panel, and of the petit jury; 2. Arrest and search and seizure questions; 3. An in-court identification by the victim; 4. The admission of testimony of pre-custodial statements and search; 5. The refusal to give a special alibi instruction.

For the reasons to be set forth, we find no error and therefore affirm.

The context circumstances show:

About 10:30 p. m., March 2nd, 1969, a Sunday, the victim, a white girl, aged 20, was returning to her parked car in a de-

serted parking lot. As she got in, a young black man appeared, stuck a sharp object to her throat, and put his hand over her mouth. He told her he would kill her if she screamed. The assailant climbed in the back and told her to drive.

The assailant forced the terrorized victim to drive him to another deserted parking lot in back of an office building. At the point of the sharp object pressed into her stomach, the victim was forced to disrobe. After a struggle, the assailant raped her. He raped her, in all, three times over the next two-three hours. He continually threatened the victim with death, saying that since she had seen his face-scar she could identify him. Finally, however, he acceded to her pleas and released her and her car about 1:30 a. m.

The defendant Amphy, a 16-year-old negro, was detained for questioning at about 9:00 a. m. on the morning following the rapes (March 3, 1969). He was picked up on the basis of his identifying face-scar. He was charged with and convicted of the rapes on the basis of: the victim's positive identification of him and of the clothes he had worn; his unexplained presence immediately after the rapes near the rape-site, with a sharp instrument in his possession; and the identification of pubic hairs found on the victim as matching pubic hairs from his body, and the identification of pubic hairs found on his body as matching pubic hairs from the victim's.

1. *The composition and selection of the grand jury, of the petit panel, and of the petit jury*

The defendant contends (a) that the indictment is invalid as brought by a grand jury illegally constituted through practice discriminatory against Negroes (Bill of Exceptions No. 3), and (b) that the petit jury panel should be quashed as not representing a true cross-section of the community (Bill No. 6.).

The main thrust of this attack is that the general venire (from which the grand jury and petit jury panels are chosen) was chosen by the jury commission through subjective factors, that it resulted from racially discriminatory practices, and that irrationally excluded from it were women and persons nonresident in the community for less than a year.

As the trial court's per curiams note, the evidence negates systematic exclusion or inclusion of Negroes; it shows a sincere effort of the commissioners to obtain qualified veniremen of both Caucasian and Negro race. We have recently rejected similar attacks on this parish's method of choosing the general venire, including the issue of the exclusion of women from jury service unless they file a written declaration of their willingness to serve (La.C.Crim.P. Art. 402). State v. Square, 257 La. 743, 244 So.2d 200 (1971);

State v. Millsap, 258 La. 883, 248 So.2d 324 (1971).

█ For the reasons there set forth, we find the trial court committed no error in rejecting the attacks presented by these bills. See also: Carter v. Jury Commission, 396 U.S. 320, 331–339, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970); Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961).

Three bills reserved as to selection of the petit jury are likewise without merit:

█ The trial court did not abuse his discretion in sustaining an objection to a question of a prospective juror, as beyond the scope of examination relative to his qualifications to serve as juror, La.C. Crim.P. Art. 786 (Bill of Exceptions No. 9);

█ The trial court's failure to sustain a defendant's challenge of a juror for cause cannot be complained of on appeal, since the record does not show that the defendant's peremptory challenges were exhausted, La.C.Crim.P. Art. 800 (and moreover, for the reasons noted by its per curiam, the trial court's ruling was not incorrect) (Bill of Exceptions No. 10);

█ Nor could the defendant object to the state's use of a peremptory challenge to excuse a Negro tendered as juror, since the motive for a peremptory challenge is beyond the scope of judicial inquiry and

presents no constitutional issue, State v. Anderson, 254 La. 1107, 229 So.2d 329 (Bill of Exceptions No. 11).

## 2. Unlawful Arrest and Search and Seizure Questions

Certain evidence was objected to as being acquired as the result of (a) an illegal detention, and certain other evidence objected to as obtained as the result of (b) an invalid consent to search. (Bills of Exceptions 2 and 19.)

### (a) Alleged Illegal Detention

Certain evidence was obtained as a result of the defendant's detention prior to the filing of formal charges against him. These included: pubic hairs from his person; testimony of alleged sperm traces as shown by ultra violet lighting; and testimony of inculpatory statements by him identifying clothing as having been worn by him the night before (which the victim identified as having been worn by her attacker).

The contention is made that such detention was illegal as being without a warrant and also without probable cause. Therefore, it is contended, the evidence noted is inadmissible, being the fruit of such illegal detention. Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The detention for questioning may be justified under Louisiana statutory law as a lawful arrest without a warrant by a police officer (La.C.Crim.P. Art. 213), at least at the time the suspect was informed at the police station of the charge about which he was to be questioned (Art. 218).

Immediately after the rape, the victim described the young Negro assailant as to height, bushy hair, and identifying facial scar.[1] The two detectives assigned to the case checked generally with other police officers and found that some knew young Amphy as the only young Negro to their knowledge having the peculiarly identifying face-mark described by the victim. Amphy also met the victim's general description of her assailant. Our jurisprudence considers this to justify holding there was probable cause to arrest, being more specific reason to detain than mere suspicion. State v. Millsap, La. 248 So.2d 324 (1971); State v. Johnson, 255 La. 314, 230 So.2d 825 (1970), see 400 U.S. 900, 91 S.Ct. 144, 27 L.Ed.2d 137; State v. Anderson, 254 La. 1107, 229 So.2d 329 (1969).[2]

Actually, the police did not consider that they were arresting Amphy. They asked him to come to the police station for questioning. He had not objected; but his coming with the police officer was more peaceful submission to a presumed lawful request, as contrasted with an informed consent.

Once at the station, Amphy was explained his constitutional rights. He was informed that he was under investigation for rape, that he need not respond to questioning, that anything he said could be used against him, and that a lawyer would be furnished him if he desired. Before any questioning took place, the police asked his grandmother, with whom he lived, to come to the station and be present during the questioning; at this time, the *Miranda* warnings were once again carefully explained to him and his grandmother, and both signed a written statement to such effect. In the initial hour, the purpose of

---

1. Actually, the "scar" was a smooth depigmented area on the left side of the face at the sideburn, a birthmark. It was consistently so described by the victim.

2. The investigating detectives testified frankly that, at the time they decided to detain Amphy for questioning, they had not yet learned from other policemen of their department (a) that another police officer had stopped and frisked Amphy the evening before, within minutes of the rapes, in their vicinity and (b) that Amphy had a prior juvenile record including peeping tom activities. We do not reach decision or whether such additional grounds, if any, for suspecting Amphy of involvement in the present sex offense could be considered in determining, retrospectively, whether the detention should be held illegal for purposes of excluding evidence garnered as a result thereof. But see Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).

the questioning was more investigatory than accusatory.

■ Our jurisprudence has not yet treated of an investigatory detention for purposes of interrogation, on the basis of grounds constituting less than the probable cause required for an arrest. Cf., however, State v. Winesberry, 256 La. 523, 237 So.2d 364 (1970). Such sort of temporary (an hour or so) detention does not, however, necessarily offend federal constitutional guarantees against unlawful searches and seizures. Morales v. New York, 396 U.S. 102, 90 S.Ct. 291, 24 L.Ed.2d 299 (1969), reviewing People v. Morales, 22 N.Y.2d 55, 290 N.Y.S.2d 898, 238 N.E.2d 307 (1968); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Comment, 29 La.L.Rev. 523, 525–26 (1969).[3]

■ We thus do not find, under the circumstances here presented, that the objected-to evidence[4] must be excluded on the basis of a detention unlawful under either state law or federal constitution. In so concluding, we rely upon all the circumstances shown, including the specific and repeated *Miranda* warnings given the defendant when detained for questioning, by reason of which he knew of the seriousness of the charges for which held, of his right to counsel, of his right to remain silent, and of the possibility that statements or other evidence obtained from him during his detention could be used against him.

(b) *Alleged Invalid Consent to Search*

The defendant also objected to introduction into evidence of a shirt, torn sweater, and trousers taken from his residence without a search warrant. These were identified by him as the clothes he had worn the night before; they matched the prior description given by the victim of her assailant's clothing; and the victim so identified them at the trial.

3. In present draft, the American Law Institute's Model Code of Pre-Arraignment Procedure proposes to permit such pre-arrest custodial interrogation, providing the individual is first informed that he has no legal obligation to furnish information or to cooperate. Sections 2.02, 3.05(1) Tentative Draft No. 2 (April 15, 1969). Field studies indicate that, in fact, such station-house interrogation is extensively used and is a valuable aid in law enforcement. ALI Model Code of Pre-Arraignment Procedure, Study Draft No. 1 (April 25, 1968). See also E. Fisher, Laws of Arrest, Sec. 34 ("Detention Incident to Investigation of Crime") (1967).

4. The evidence objected to on this ground includes pubic hairs taken from the accused's body and matched with hairs from the victim's body. Other bills of exceptions (Nos. 20, 24, and 25) objected to their admission into evidence and to the testimony of the expert who identified them as identical to pubic hairs found on the victim's body. We have recently held such evidence admissible against similar attacks. State v. Square, 257 La. 743, 244 So.2d 200, 224–25, 232–33 (1971). For the reasons there assigned, the evidence is admissible. We do not find its probative value to be outweighed by its prejudicial effect.

The detectives had gone with the grandmother to her home, where Amphy lived, and she had given them the clothes. · Prior to their going to the home, the grandmother had signed a waiver of the requirement for a search warrant. Her testimony indicates she clearly understood the necessity for a search warrant unless she consented to the search (in this instance, by signing the consent form).

The state must prove by clear and convincing evidence the voluntary, knowing, and intelligent waiver by a person of his constitutional rights by his consent to a warrantless search. State v. Welch, 256 La. 1, 235 So.2d 72 (1970); State v. Andrus, 250 La. 765, 199 So.2d 867 (1967). The burden cannot be met by merely proving peaceful submission, and the burden is particularly heavy when the person consenting may have done so by reason of police detention or a claim of police authority. Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Davis, Federal Searches and Seizures, Sections 4.-31 (1964).

This heavy burden has been met in this instance. Further, the factual determination of the trial court of the validity of the consent should be given great weight, and it will not be disturbed on review unless clearly erroneous. State v. Hall, 257 La. 253, 242 So.2d 239 (1970).

No issue is raised as to the right of the grandmother to consent to search of her premises, in which her grandson lived. Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684; Davis, Federal Searches and Seizures, Section 4.6 (1964).

We therefore find that the trial court correctly permitted the clothing to be introduced into evidence.

## 3. *In-Court Identification*

Following her first report, the victim described her assailant consistently and clearly, including the peculiar face-scar.

Immediately following Amphy's detention, the victim identified him from a lineup as her assailant. The trial court, however, suppressed this lineup as violative of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), due to the absence of waiver of counsel.

The defendant contends that the victim's in-court identification of the assailant should have been excluded, as tainted by the illegal and impermissibly suggestive prior lineup identification. Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969).

Nevertheless, the claim that the out-of-court identification was so impermissibly suggestive as to be conducive to irreparable mistaken identification must, in each instance, be judged by the totality of the surrounding circumstances. The

subsequent in-court identification need not be rejected if, under all the surrounding circumstances, clear and convincing evidence proves that the in-court identification did not result from the improper lineup, but rather from observations at the time of the crime. Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

The victim had clear opportunity and numerous occasions of clear visibility to recognize and remember her assailant over the terrorized two-three hours he held her captive. Her attention was drawn to his scar (birthmark) not only by its peculiarity and obviousness, but also by her assailant's emphasis upon it as an identifying factor by reason of which he should kill her. Prior to Amphy's detention, she had clearly and accurately described to the police the scar and his general features and build, and it was in fact as a result of this clear description that Amphy was picked up for questioning.

The burden has been met to prove by clear and convincing evidence an identification of the suspect independent of the improper lineup. State v. Henderson, 253 La. 981, 221 So.2d 480 (1969); State v. Allen, 251 La. 237, 203 So.2d 705 (1967); See also State v. Junius, 257 La. 331, 242 So.2d 533 (1970).

4. *Admission of Pre-Custodial Statements and Search*

Within minutes after the rape, but before it was reported, a city police officer observed a young Negro male riding a bicycle a few blocks away from the site of the rapes. This was young Amphy.

The officer stopped him and asked him to explain his presence at that hour in the morning on the deserted streets, since there had been a number of vending machine and bicycle thefts in the area. The officer also found it strange that, although a heavy one-hour rain had just stopped, the young man's clothes were dry.

Seeing a protrusion in the rider's pocket, the police officer asked Amphy if he minded being frisked. The officer then found a sharp, pointed-end (Phillips) screw-driver in the pocket.

(The officer checked by radio with headquarters and, finding no reason to detain Amphy, followed him to his mother's home and checked to be sure the bicycle belonged to him. Because of this radio check, the investigating detectives learned next morning that Amphy had been reported on the deserted streets at this late hour soon after the rape; although they did not so learn until after they had already detained him because, principally through his peculiar scar, he met the victim's description of her attacker.)

The defendant objected to admission of this officer's interrogation and of his find

of a pointed instrument of a nature such as had been used to threaten the victim. Principally, the defendant objects that the Miranda warnings of constitutional rights were not given at that time. (Bill of Exceptions No. 17.)

■ Essentially, *Miranda* requires certain pre-interrogation warnings of constitutional rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, the present momentary "stop and frisk" (see below) for general investigatory purposes is not within the scope of those custodial interrogations which require the intelligent and knowing waiver of counsel and the giving of the Miranda warnings. *Miranda* essentially refers to interrogations "after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way", 384 U.S. 444, 86 S.Ct. 1612, when "the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect", 378 U.S. 490, 84 S.Ct. 1758, 12 L.Ed.2d 977 (*Escobedo*; referred to in *Miranda* at 384 U.S. 444, 86 S.Ct. 1602); it does not, for instance, apply to "general questioning of citizens in the fact-finding process", 384 U.S. 477, 86 S.Ct. 1629.

See: Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). See also: Comment, 29 La.L.Rev. 523, 530–32

(1969); Platt, The Limits of Stop and Frisk, 10 Arizona L.Rev. 419, 433–35 (1968).

■ The night officer stopped Amphy on the deserted streets to ascertain his name, address, and an explanation of his actions. He frisked the outer clothing to ascertain whether the bulge represented a weapon or instrumentality of crime. The policeman did so under authority of our stop and frisk law, La.C.Crim.P. Art. 215.1. His testimony indicates that he had legal cause for this stop and frisk, and indeed no question is raised as to this. State v. Winesberry, 256 La. 523, 237 So.2d 364 (1970); Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968); Comment, Louisiana's Stop and Frisk Law, 29 La.L.Rev. 523 (1969).

5. *The Refusal to Give a Special Alibi Instruction*

■ The defendant reserved a bill as to the trial court's failure to give a special charge on the issue of alibi raised by the defendant to contradict the State's testimony that he was at the scene of the rapes. (Bill of Exceptions No. 7.) Essentially, the requested charge indicated that if the alibi, in connection with all the other evidence, raised a reasonable doubt of guilt, then the jury should acquit. Tr. 49.

The trial court refused to give the charge on the ground that his general

charge, touching specifically on alibi, (Tr. 1146), sufficiently covered the substance of the requested special charge.

The general charge defined the defense of alibi as involving the reasonable exclusion of the possibility of the defendant's presence at the scene of the crime, and it then reiterated an earlier instruction and, with specific reference to the alibi defense, stated: " * * * it is not necessary the jury be fully satisfied of its truth, but the evidence in support of it should be considered in connection with all the other evidence in the case, and if, on the whole evidence, there is reasonable doubt of the guilt of the accused, he should be acquitted." Tr. 1146.

We find no error in the trial court's ruling refusing to give the requested special charge.

## Other Errors Alleged

The defendant perfected in all twenty-nine bills of exceptions. On appeal, he specifically abandoned seven of them (Nos. 16, 18, 21, 22, 23, 26 and 27.)

Our prior discussion has disposed of the contentions raised by the more serious of the remaining bills. We likewise find no merit to the remaining bills.

 They concern, for instance, questioning of witnesses (Nos. 8, 14, 15), conduct of the preliminary hearing and failure to allow release on bail (No. 1), denying pre-trial discovery (No. 4), questions relating to capital punishment (Nos. 12 and others), and failure to order transcribed matters not material to the appeal (No. 29). For the reasons stated by the trial judge, these involve application of well-settled jurisprudence or the nonarbitrary use of the trial court's discretion.

We should expressly note we find no error in the trial court's denial of a new trial. (Bill of Exceptions No. 28.)

 Aside from grounds previously urged, the defendant's motion for a new trial conceded that, just before the defense put on its case, the defense witnesses were frightened by an unknown white man with a badge, but in a civilian suit. This man questioned the witnesses as to their names, addresses and prospective testimony. It is concluded that these witnesses all testified in favor of the defendant, but it is contended that they were frightened and this reflected on their demeanor and credibility at the trial. Tr. 1165.

A hearing was granted on the motion for new trial, at which the defense witnesses testified as to the incident. The trial judge noted that, at the trial, he had been informed of the alleged intimidation and had had the sheriff and district attorney investigate it, without result. The judge noted that he had observed the defense witnesses testifying and found that no actual prejudice had resulted to the de-

fendant from this incident. We are unable to find that he erred in such conclusion.

*Decree*

Accordingly, we affirm the conviction and sentence.

Affirmed.