283 So.2d 756 (1973)
STATE of Louisiana
v.
Charles NEWMAN.
No. 53422.
Supreme Court of Louisiana.
September 24, 1973.
Rehearing Denied October 26, 1973.
*757 Maynard E. Cush, Shreveport, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Sp. Counsel to Atty. Gen., John A. Richardson, Dist. Atty., Dan J. Grady, III, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Charles Newman was charged and convicted of simple burglary and was sentenced after a trial by jury to serve seven years at hard labor. Four bills of exceptions were perfected.
At approximately 4:00 a. m. on September 18, 1972 illegal entry was made into the residence of Mrs. E. R. Stinson in Shreveport, Louisiana. The burglar was seen by thirteen year old Alice Stinson who was in bed with her eight year old sister. Alice was aroused from her slumber and in the partially illuminated room saw a black man clad in black undershorts sitting on the bed. She sat up and started to scream when the intruder said words to the effect, "Don't scream, I'm leaving." The Negro male left through a window, and Alice ran into her mother's bedroom. Mrs. Stinson contacted the Shreveport police department.
Alice Stinson and her mother were taken to headquarters on the night in question and efforts were made to conduct a line-up. The young girl was visibly upset and did not want to take part in the procedure. *758 Detective Morgan attempted to calm her down and allay her fears by explaining the nature of a line-up. He took the crying child into a viewing area to show her the one-way glass. Simultaneously, Lieutenant Templin, ignorant of the presence of Detective Morgan and Miss Stinson, came into the conference room with the defendant in custody to prepare for the line-up. The child immediately identified the defendant and resumed crying. This incident was not placed in the police report and was only uncovered on cross-examination of the witnesses. On direct examination by the district attorney, one of the detectives explained that the incident was omitted from the report because he "didn't see how it could be used" because of its prejudicial nature. The State did not attempt to use the out-of-court identification, but did rely on an in-court identification made by the young Stinson girl.[1]
Bill of Exception No. 1
This bill was reserved when the trial judge refused to grant a mistrial based upon the hysterical outburst of the Stinson girl during the course of the trial. The defendant alleges that the child's crying while saying "he broke in" was unresponsive to the questions and unduly prejudicial. This contention is rejected since unsolicited statements and spontaneous conduct of a witness are not usually grounds for a mistrial. C.Cr.P. 770, 775; State v. Jones, 263 La. 1012, 270 So.2d 489 (1972); State v. Callihan, 257 La. 298, 242 So.2d 521 (1970). The judge stated on refusal of the motion that the crying was not unexpected by the jurors in light of the age of the witness and the circumstances, and that in all probability it would happen again should the case be retried. The denial appears to be proper.
Bills of Exception Nos. 2, 3, 4
The grounds for all three bills are identical and are founded upon the district court's failure to grant a mistrial or to instruct the jury to disregard the identification testimony because of the prejudicial nature of the showup. An examination of the testimony shows that the thirteen year old girl had only viewed the burglar for a few seconds. The bedroom was dark with the only light emanating from a nearby bathroom where the door was partially closed. She had awakened from a sound sleep and was visibly upset. Detective Morgan testified that Miss Stinson was still crying upon her arrival at the police station, and that when the chance confrontation occurred she became almost hysterical again.
Due process prohibits the conduct of an identification procedure in a manner that is unnecessarily suggestive and conducive to irreparable mistaken identification. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). In a determination of whether an identification procedure was impermissibly suggestive, reference must be made to all the circumstances. State v. Amphy, 259 La. 161, 249 So.2d 560 (1971); Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); Foster v. California, supra; Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The record indicates that the confrontation at the police station was accidental. Nevertheless, one-on-one identification procedures are not favored. Foster v. California, supra; Stovall v. Denno, supra.
Exceptions are recognized to the general prohibition against one-on-one identification procedures. Stovall v. Denno, *759 supra. One exception permits a one-on-one confrontation between an accused in custody and a witness where the accused is apprehended within a relatively short time and is returned to the scene of the crime for on the spot identification. In State v. Bland, 260 La. 153, 255 So.2d 723 (1971), this procedure was approved where the accused was returned to the scene fourteen hours after commission of the offense, but it should be noted that the court found the in-court identification to be based on an independent source even if the out-of-court identification was tainted.
The instant case does not properly fit within the exception. The accused was at the police station. The witness was at the station. All the facilities to conduct a full fledged line-up were available and should have been used.
Even if the out-of-court identification was tainted, if the in-court identification had a source independant of the out-of-court identification, the in-court identification does not violate defendant's due process rights. State v. Amphy, supra; State v. Richey, 258 La. 1094, 249 So.2d 143; United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926 18 L.Ed.2d 1149 (1967). A determination of whether the witness's incourt identification was based on an independent source seems to involve three factors:
1. The prior acquaintance of the witness with the accused. State v. Rose, 271 So.2d 863 (1973); State v. Jackson 259 La. 957, 254 So.2d 259 (1971).
2. Length of time the witness observed the perpetrator before, during and after commission of the offense. State v. Hall, 261 La. 777, 260 So.2d 913 (1972); State v. Pierre, 261 La. 42, 259 So.2d 6 (1972); State v. Richey, supra; State v. Amphy, supra; State v. Pratt, 255 La. 919, 233 So. 2d 883 (1970).
3. The circumstances under which the observation was made. See, generally, the cases cited in the preceding paragraph. This consideration should include illumination at the scene, the physical capacities of the witness, and the emotional state the witness was in at the time of observation.
In the instant case, the witness did not know the accused. She had an opportunity to observe the person who entered her room for only a brief period. The illumination in the room was slight, being provided by a light in a room down the hall with a partially opened door. The witness had just waked from a sound sleep. She was young and apparently in a state of severe emotional distress. The description she furnished was sketchy: tall, black, wearing black underwear.
On four subsequent occasions, when the case was fixed for trial and, at the request of the State, was continued, the mother of the identifying witness pointed the accused out to her daughter in the courtroom and stated "that's the man." It is hardly possible that this in-court identification of the defendant could have a source independent of the showup at the police station and the subsequent instructive courtroom encounters.
This identification procedure violated the defendant's due process rights. The incourt identification should be excluded. Bill No. 2 was taken when a motion for a mistrial or instruction to the jury to disregard the testimony of Miss Stinson concerning the identification of the accused was denied. Bill No. 3 is merely a reiteration of Bill No. 2. Bill No. 4 was reserved when a motion to instruct the jury to disregard the testimony of any person concerning any identification associated with the so-called line-up was denied. All three bills have merit.
The conviction and sentence are reversed and set aside, and the case is remanded for a new trial consistent with this opinion.
*760 SANDERS, C. J., dissents with written reasons.
SUMMERS, J., dissents and assigns reasons.
MARCUS, J., dissents with written reasons.
SANDERS, Chief Justice (dissenting).
In this case, the police brought the defendant into the Conference Room at Police Headquarters, unaware of the presence of the victim. Upon seeing the defendant, the victim spontaneously identified him. The identification was in no way prompted or inspired by members of the police department. This spontaneous reaction by a young girl, who had only shortly before been victimized, is an example of res gestae under our jurisprudence. See State v. Reese, 250 La. 151, 194 So.2d 729, cert. den. 389 U.S. 996, 88 S.Ct. 485, 19 L.Ed.2d 495. It does not taint the subsequent identification, since it is itself admissible as evidence.
In State v. Kirklan, 260 La. 1011, 257 So.2d 693 (1972), this Court affirmed a conviction after an in-the-field identification by the victim, holding:
"... [A] criminal suspect may be apprehended so close in proximity to time and place of the crime itself that the exigencies of the situation make it neither practical nor necessary to afford counsel for an in-the-field identification. State v. Richey, 258 La. 1094, 249 So.2d 143 (1971); State v. Amphy, 259 La. 161, 249 So.2d 560 (1971). Neither U. S. v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, nor Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) requires a contrary holding. There is no showing here that the procedure was conducted so unfairly or in such an impermissively suggestive manner as to amount to denial of due process of law."
Although the identification in Kirklan, supra, was an in-the-field one, the situation does not materially differ from the situation presented in this case. The cases of State v. Ash, 257 La. 337, 242 So.2d 535 (1971) and State v. Amphy, 259 La. 161, 249 So.2d 560 (1971)relied upon by the majorityset forth the same test for admissibility as State v. Kirklan, supra.
I find no violation of due process in the present case.
For the reasons assigned, I respectfully dissent.
MARCUS, Justice (dissenting).
I respectfully dissent. The out-of-court identification was accidental. Furthermore, the State did not attempt to use the out-of-court identification, relying on the in-court identification by the Stinson girl. The confrontation was accidental and should not be considered similar to the unfavored type of one-on-one identification procedure which might be unnecessarily suggestive. Even if the accidental confrontation created a tainted out-of-court identification, I feel that the in-court identification was valid. It was based upon the witness' independent observation while facing defendant as he sat on her bed on the night of the crime. I do not feel that defendant's constitutional right to due process has been violated, and I disagree with the majority's conclusion that the incourt identification should have been excluded.
In my opinion, the conviction and sentence should be affirmed.
SUMMERS, Justice (dissenting).
I subscribe to the reasons assigned by the Chief Justice and Mr. Justice MARCUS in their dissents. I am convinced, moreover, that the in-court identification was based upon the thirteen-year-old girl's independent recollection of the defendant when she saw him on her bed the night of the *761 crime. This independent recollection is dramatically illustrated by her spontaneous recognition of the defendant when he was accidentally brought into her presence shortly after the crime was committed. No one asked her whether she saw anyone she recognized, defendant was not pointed out to her, nothing was done to suggest to her that the person brought into the conference room was the suspect in the break-in at her house. Insofar as any neutral observer was concerned, defendant could just as well have been any other person arrested by the police that night.
The real significance of this identification was that the young girl identified the defendant immediately upon seeing him, with no action on the part of the police to influence her. After this experience, and having seen him on her bed on the night of the break-in, there is no reason whatsoever to conclude that she could not identify this same defendant at the trial regardless of what transpired in the interim.
It is stretching the point beyond tolerance to say that she didn't have an opportunity to observe him sitting on her bed. She was perceptive and alert enough to notice he had a short Afro haircut and black underwear, and to otherwise describe him to the police. Especially is her capacity to accurately observe confirmed when defendant was apprehended within minutes after the police cordoned off the neighborhood. He had an Afro haircut and he was wearing black underwear. And her powers of recall and observation were further confirmed when she so readily recognized the defendant shortly thereafter in the police station.
And this is not a case of conviction on the identification of the young girl alone. A host of facts and circumstances were established at the trial sufficient to establish the defendant's guilt beyond a reasonable doubt notwithstanding the girl's positive identification.
At approximately 4:00 a.m., September 18, 1972, a suspect entered the residence of Mrs. E. R. Stinson in Shreveport. The suspect was a Negro male with a short Afro type haircut, wearing black underwear. He got into bed with two juvenile girls, and when the older (13 years) awakened he left hurriedly.
The terrain in the neighborhood was uneven. Many fences and profuse shrubbery and bushy growth covered the area. Defendant was apprehended in the immediate neighborhood shortly after the break-in was reported. He was in a disheveled condition; grass and leaves were in his hair and clothing; he was scratched and perspiring heavily; he was wearing black underwear and carrying his shirt in his hand.
When stopped, defendant was asked to state his business in the neighborhood. His automobile had run out of gas, he said, and he was trying to find a filling station. But when the officers located his automobile near the residence where the break-in occurred, the gas tank was one-fourth full, and the motor started easily.
Even if I were able to accept the majority ruling that the identification of this defendant was tainted, which I certainly cannot, the error was harmless, and did not influence his conviction in the face of the overwhelming physical and circumstantial evidence which I have briefly outlined. La.Code Crim.Proc. art. 921.
NOTES
[1] In argument the assistant district attorney states that if this identification procedure were intentional, it would be unconstitutional, but not so, if accident. We consider that the defendant is protected from both intentional and "accidental" violations of his rights to due process.