284 So.2d 749 (1973)
STATE of Louisiana
v.
Stanley MOSELEY.
No. 53579.
Supreme Court of Louisiana.
October 29, 1973.
*750 Edward C. Keeton, Gretna, Chauppette, Genin, Mendoza & Keeton, Marrero, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Asst. Atty. Gen., Francis Dugas, Dist. Atty., Walter K. Naquin, Jr., Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Defendant, Stanley Moseley, was charged by bill of information with armed robbery. A jury returned a verdict of guilty as charged. Defendant was sentenced to serve twelve years imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Defendant relies on one bill of exceptions to obtain reversal of his conviction and sentence. This bill was reserved after the trial judge denied a pre-trial motion to suppress his out-of-court identification by the victim and two witnesses.
The record discloses that on June 13, 1971, at approximately 9:30 p. m., the door bell rang at the front door of Sterling "Butch" Ledet's residence in Larose, Louisiana. Ledet owns and operates a supermarket, and, on that evening, he was expecting a delivery of cash and check receipts for the day. After the supermarket closed, such receipts were usually transported in a metal box from the store to Ledet's residence by an employee. When Ledet opened the door, a white male standing on the porch inquired whether he was Butch Ledet. Upon replying in the affirmative, the man pointed a gun at Ledet's face, shoved him back into the house onto the floor and entered the premises. The intruder was wearing no mask or other object to cover his face. He then held a pistol against Ledet's head and removed his wristwatch, ring and wallet. The man asked Ledet the location of the cash box. Ledet replied that he had not received it. Within a matter of minutes, Mrs. Florence Mitchell, assistant manager, and Miss Eudora Belard, cashier, of the supermarket arrived with the cash box. When asked by Mrs. Mitchell what was the matter, the intruder grabbed Mrs. Mitchell's arm, pulled her into the house and also ordered Miss Belard into the house. Ledet, Mrs. Mitchell and Miss Belard were ordered to lie on the floor face down while the intruder took all the cash ($8,372.00) out of the cash box. The man then forced the three victims to squat in the living room closet. About five minutes later, the intruder opened the closet door, grabbed Ledet and forced him to crawl into the bedroom. He grabbed the bedspread and threw it over Ledet. He then shot the telephone and struck Ledet on the head three times with the pistol. Then the intruder left through the front door. The victim and witnesses testified that the entire incident occurred over a period of twenty to twenty-five minutes in a well-lighted house.
On the evening of July 26, 1971, forty-three days after the above described robbery, defendant was arrested and brought to the police station at Galliano. Ledet was contacted by the police authorities to come to the station for the purpose of making an identification. Ledet arrived and made a positive identification of defendant as the man who robbed him. This was a one-to-one confrontation. Defendant was then confined alone in a cell. Ledet was instructed to pick up Mrs. Mitchell and Miss Belard and bring them to the station in order to make an identification. Upon picking up Mrs. Mitchell, he told her that he was bringing her to the station because the police thought they had the man that robbed him. They then went to pick up Miss Belard at her residence, and Mrs. Mitchell informed her that she had to go to Galliano to identify the man that had robbed them. Upon arrival at the station, Mrs. Mitchell was first taken by a police officer to see the defendant in the jail cell where she made an immediate positive identification of defendant as the man who had committed the robbery. Thereafter, Miss Belard was brought in and made a similar identification of defendant.
*751 Prior to trial, defense counsel filed a motion to suppress the identifications. After the hearing thereon, the trial judge denied the motion, and defense counsel reserved a bill of exceptions. During the trial, the victim and two witnesses made in-court identifications of defendant. Defense counsel never objected at the time these in-court identifications were made, nor did he reserve any bills of exceptions. At no time during the trial did the State introduce evidence of the out-of-court identifications of defendant. Testimony of the witnesses pertaining thereto was elicited by the defense on cross-examination and on the direct examination of defendant.
Defendant urges that his constitutional rights to a fair trial and due process were violated by the allegedly unlawful and suggestive identifications of him by the victim and two witnesses.
Since the State offered no evidence in connection with the out-of-court identifications during the trial of this matter, defendant's bill, taken to the overruling of the motion to suppress, has no basis. See State v. Grey, 257 La. 1070, 245 So.2d 178 (1971). Defense counsel neither objected to nor reserved any bills of exceptions to the in-court identifications made by the victim and two witnesses during the course of the trial. Where defense counsel fails to object to alleged prejudicial evidence at the time it is given and fails to reserve a bill of exceptions to its admission, nothing is presented for review. State v. Miller, 254 La. 73, 222 So.2d 862 (1969); State v. Reed, 252 La. 128, 209 So.2d 730 (1968); Articles 841 and 920 C. Cr.P. Cf. State v. Jones, 261 La. 422, 259 So.2d 899 (1973).
Notwithstanding the fact that the issue has not been properly presented for our review, we will consider the contention of the defendant. In order to do this, we must first determine whether the out-of-court identifications were so unnecessarily suggestive and conducive to irreparable mistaken identification that defendant was denied due process of law. While the practice of showing a suspect singly to persons for the purpose of identification, and not as a part of a lineup, is not favored, a claimed violation of confrontation depends on the totality of the circumstances surrounding it. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Therefore, even if the out-of-court identification was tainted, if the in-court identification had a source independent of the out-of-court identification, the in-court identification does not violate defendant's due process rights. State v. Newman, No. 53,422 on the docket of this Court handed down on September 24, 1973, 283 So.2d 756; State v. Amphy, 259 La. 161, 249 So.2d 560 (1971); State v. Richey, 258 La. 1094, 249 So.2d 143 (1971); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).
We stated in State v. Newman, supra, that a determination of whether the witness' in-court identification was based upon an independent source involves these factors: (1) the prior acquaintance of the witness with the accused; (2) length of time the witness observed the perpetrator before, during and after commission of the offense; (3) the circumstances under which the observation was made. This would include illumination at the scene, the physical capacities of the witness and the emotional state the witness was in at the time of observation.
In the instant case, defendant stated that he had been introduced to one of the witnesses on several occasions at the supermarket where she was employed, but this was denied by the witness. The victim and the other witness did not known *752 the defendant. All three witnesses observed defendant off and on during the commission of the crime which lasted from twenty to twenty-five minutes. It is true that defendant was only within their immediate view for brief intervals during this period; however, their observations were at close proximity in a well-lighted house. Furthermore, the witnesses were experienced people in the retail business who appeared to have good capacities for observation and recall of details. Finally, their testimony indicated that they were relatively calm and unemotional under the circumstances. It is noted that there was a lapse of forty-three days between the armed robbery and the confrontation at the police station. This is a negative factor; however, weighing all the circumstances, we are satisfied that the in-court identifications had a source independent of the out-of-court identifications. Hence, the in-court identifications did not violate defendant's due process rights.
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., concurs with reasons.
BARHAM, J., dissents with reasons.
DIXON, Justice (concurring).
I respectfully concur.
At trial, the State did not use evidence of the out-of-court identification, but relied on the in-court identification of the defendant by the three witnesses.
The bill of exceptions pertains to the denial of a motion to suppress grounded on the identification procedure being impermissibly suggestive.
In State v. Newman, La., 283 So.2d 756, decided September 24, 1973, we stated our general disapproval of one-on-one identification procedures. As in Newman, the instant case does not fit within any recognized exception to the general prohibition against one-on-one identification procedures.
However, even if the out-of-court identification was tainted, if the in-court identification had a source independent of the out-of-court identification, the in-court identification does not violate defendant's due process rights. State v. Amphy, 259 La. 161, 249 So.2d 560 (1971); State v. Richey, 258 La. 1094, 249 So.2d 143 (1971); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). A determination of whether the witness' in-court identification was based on an independent source seems to involve three factors:
1. The prior acquaintance of the witness with the accused. State v. Rose, 271 So.2d 863 (La.1973); State v. Jackson, 259 La. 957, 254 So.2d 259 (1971).
2. Length of time the witness observed the perpetrator before, during and after commission of the offense. State v. Hall, 261 La. 777, 260 So.2d 913 (1972); State v. Pierre, 261 La. 42, 259 So.2d 6 (1972); State v. Richey, supra; State v. Amphy, supra; State v. Pratt, 255 La. 919, 233 So. 2d 883 (1970).
3. The circumstances under which the observation was made. See, generally, cases cited in the preceding paragraph. This consideration should include illumination at the scene, the physical capacities of the witness, and the emotional state the witness was in at the time of observation. State v. Newman, supra.
Applying these factors to the immediate instance:
1. Apparently none of the witnesses knew the accused.
*753 2. Sterling Ledet observed the perpetrator intermittently over a ten to twenty minute period. The other two witnesses observed the perpetrator for a three to five minute period.
3. According to testimony the porch light was on, the light in the hall where most of this incident took place, and one in the adjoining living room were on. Needless to say, all the witnesses were nervous and frightened but none appear to have been hysterical.
Ample evidence exists to support a finding that the in-court identification had a source independent of the tainted out-of-court identification. See State v. Hall, supra; State v. Pierre, supra; State v. Richey, supra; State v. Amphy, supra; State v. Pratt, supra.
BARHAM, Justice (dissenting).
The identification witnesses made an unconstitutional one on one identification of this defendant almost two months after the crime and while the defendant was in custody in the police station. As the majority points out, they were told that the police believed the man they were about to view was the robber.
It is difficult to believe that circumstances could exist which would influence out of court identification more than the set of circumstances surrounding this particular line-up.
This is such a tainted unconstitutional out of court identification that I can not countenance the in court identification as being based upon any extraneous independent recognition factors.
I am of the opinion that the identification here is an unconstitutional denial of due process requiring reversal.