321 So.2d 324 (1975)
STATE of Louisiana
v.
Arenta PEEVY.
No. 56478.
Supreme Court of Louisiana.
November 3, 1975.
John R. Joyce, Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., John R. Harrison, Asst. Dist. Atty., for plaintiff-appellee.
*325 MARCUS, Justice.
Arenta Peevy was charged by bill of information with the armed robbery of Jerry Sapp in violation of La.R.S. 14:64. After a trial by judge, defendant was found guilty. Thereafter, Peevy was sentenced to serve ten years at hard labor. He appealed his conviction and sentence, relying upon five assignments of error. However, in brief filed in this court, he has withdrawn Assignments of Error Nos. 3, 4 and 5.

FACTS
Four black men, one of whom was Peevy, entered the 7-11 store located on Seventh and Mill Streets in West Monroe, Louisiana, in the early morning hours of January 22, 1975. Jerry Sapp was the sole employee in the store. No purchase was made at this time; however, there was some conversation between Peevy and Sapp concerning the time and the possible purchase of some liquor. Sapp testified that they were in the store for about five minutes on this occasion. The four men left but returned about ten to fifteen minutes later. On their return, Sapp was outside sweeping in front of the store. Two of the men proceeded into the store. They were followed by Sapp who was followed by one of the other men. A purchase was made and when Sapp opened the cash register, Peevy pulled a knife out of a case and held it on Sapp while the other two men removed $67.00 from the two cash registers in the store. The store was well lighted. Sapp testified that the robbery "probably" took less than five minutes. After the departure of the robbers, Sapp reported the crime to the police, giving them a brief description of the four men and the vehicle they had been driving on the first occasion. Within ten minutes of the complaint, the police stopped the vehicle occupied by Peevy and his three accomplices. They were arrested and jointly charged with the armed robbery of Sapp. Subsequently, the charge was severed, and Peevy was separately tried by a judge after having waived trial by jury. The trial resulted in his conviction and sentence to serve ten years.

ASSIGNMENT OF ERROR NO. 1
Defendant contends that the trial court erred in denying his motion to suppress an inculpatory statement made by him. It is argued that, since defendant first refused to sign a waiver of rights form and make a statement, a subsequent inculpatory statement made by defendant was inadmissible in evidence in that it was not free and voluntary and was the product of coercion.
At the hearing on the motion to suppress, the state offered the testimony of two police officers, Charles Dortch and Pat Kelly. According to Officer Dortch, he first talked with defendant in his office at the West Monroe City Hall between 2 and 3 o'clock in the morning of January 22, 1975. At this time, he orally advised Peevy of his Miranda rights and then gave him a written copy of these rights on a waiver form. Defendant refused to sign the waiver form and made no inculpatory statement at this time. Dortch next interviewed defendant at the Ouachita Parish jail at about one o'clock on the following afternoon. On this occasion, he was accompanied by Officer Kelly. Defendant was present with his accomplices. He advised Dortch that they wanted to discuss the case. Having already advised the others of their rights, Dortch then advised defendant of his Miranda rights and gave him a waiver form which he read and signed. After conferring together, defendant and his accomplices agreed to tell what happened. They were then transported to the West Monroe Police Station in order that the statements could be recorded on the machine located there and transcribed by Dortch's secretary. At the police station, Peevy was again advised of his Miranda rights prior to making the inculpatory statement. The entire proceedings were recorded on the machine. Officer Kelly corroborated the testimony of Officer Dortch. No rebutting testimony *326 was offered by defendant nor did he testify at this hearing.
The record clearly substantiates the findings of the trial judge that the confession made by Peevy at the police station was free and voluntary with no hint of any force, coercion, promise of reward or offer of leniency. It should be observed that when defendant initially refused to sign the waiver form and make a statement immediately after his arrest (in the early morning hours of January 22, 1975), the officers ceased the questioning, and defendant was allowed to return to his cell to sleep. It was not until the afternoon of the next day, around one o'clock, that Officers Dortch and Kelly went to the parish jail to interview the suspects again. The fact of a prior effort to question Peevy did not have the effect of coercing him to sign the waiver form. As aptly stated in Massimo v. United States, 463 F.2d 1171 (2d Cir. 1972), cert. denied, 409 U.S. 1117, 93 S.Ct. 920, 34 L.Ed.2d 700 (1973),
The police have the privilege of `asking a defendant to reconsider his refusal to answer questions,' United States v. Collins, 462 F.2d 792 (2d Cir. 1972).
The decision by Peevy to sign the waiver form and make a statement came only after consultation with his accomplices and notification to the police officers that they wanted to tell what happened. Nothing in Miranda prevents an accused party from changing his mind and giving a statement after he has previously declined to do so. So long as the statement was voluntary and intelligently made, it is admissible in evidence. State v. Higginbotham, 261 La. 983, 261 So.2d 638 (1972).
In view of the foregoing, we conclude that the trial judge correctly found that the defendant's confession was freely and voluntarily made and was not the product of coercion or duress after having been fully advised of his constitutional rights as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Hence, the confession was properly admitted in evidence. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends that the trial judge erred in not suppressing the identification of him made by the victim (Sapp). It is urged that the defendant was first identified by Sapp at the police station after he had been previously informed that someone had been apprehended for the offense. Defendant argues that this out-of-court identification was so suggestive as to taint any in-court identification and thus violate his due process rights.
The evidence adduced at the hearing on the motion to suppress the identification reveals that about thirty minutes after the robbery, Sapp was picked up and taken to the West Monroe police station to make a statement. He had previously been told by his supervisor that four suspects had been picked up. When he arrived at the police station, he was seated in an outer office behind a desk. Shortly thereafter, the police arrived with four black men who walked past Sapp. A few minutes later, Sapp went upstairs to Officer Dortch's office and again passed the four men who were seated on the bench in the hall. Sapp informed Dortch that the men sitting outside were those who robbed him.
The test of whether the out-of-court identification was to impermissibly suggestive and conductive to mistaken identification that defendant was denied due process of law must be determined by the facts of each case. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). While the practice of showing a suspect singly to persons for the purpose of identification, and not as a part of a lineup, is not favored, a claimed violation of confrontation depends on the totality of the circumstances surrounding it. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Kirby v. Illinois, 406 U.S. 682, 92 *327 S.Ct. 1877, 32 L.Ed.2d 411 (1972); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Therefore, even if the out-of-court identification was tainted, if the in-court identification had a source independent of the out-of-court identification, the in-court identification does not violate defendant's due process rights. State v. Payton, 294 So.2d 211 (La.1974); State v. Moseley, 284 So.2d 749 (La.1973); State v. Newman, 283 So.2d 756 (La.1973); State v. Amphy, 259 La. 161, 249 So.2d 560 (1971); State v. Richey, 258 La. 1094, 249 So.2d 143 (1971). In State v. Moseley, supra, citing Newman, we stated that a determination of whether the witness' in-court identification was based upon an independent source involves these factors: (1) the prior acquaintance of the witness with the accused; (2) length of time the witness observed the perpetrator before, during and after commission of the offense; (3) the circumstances under which the observation was made. This would include illumination at the scene, the physical capacities of the witness and the emotional state the witness was in at the time of observation.
The viewing of the defendant at the police station occurred only thirty minutes after the robbery had occurred. It was inadvertent and not deliberately contrived. The victim, Sapp, clearly saw defendant and conversed with him during the first visit to the store which lasted about five minutes. Within ten to fifteen minutes, defendant returned with his accomplices. It was during this second visit that the robbery took place. The store was well lighted. It was the defendant who held the knife on Sapp at close range. The parties were face to face. The robbery took place over a period of time which Sapp describes as "probably" less than five minutes. At trial, Sapp positively identified defendant as the man who held the knife on him at the time of the robbery. In view of the totality of the surrounding circumstances, we are convinced that the in-court identification of defendant by Sapp was based independently upon his observations made during the robbery rather than upon the confrontations at the police station. Therefore, since the in-court identification had a source independent of the out-of-court identification, the in-court identification did not violate defendant's due process rights. State v. Bland, 310 So.2d 622 (La.1975); State v. Fortenberry, 307 So.2d 296 (La.1975); State v. Payton, 294 So.2d 211 (La.1974); State v. Baggett, 292 So.2d 201 (La.1974); State v. Moseley, 284 So.2d 749 (La.1973). This assignment of error is without merit.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.