328 So.2d 81 (1976)
STATE of Louisiana
v.
Elzie BALL and Bernell Thompson.
No. 56953.
Supreme Court of Louisiana.
February 23, 1976.
*82 Allan J. Tillery, Arabi, for Elzie Ball.
John M. Lawrence, New Orleans, for Bernell Thompson.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leander H. Perez, Jr., Dist. Atty., Gilbert V. Andry, III, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
Elzie Ball and Bernell Thompson were charged by bill of information dated June 20, 1974 with the armed robbery of Anne Sue Gurganus at the Nunez Bar and Grill in Chalmette, St. Bernard Parish, on May 30, 1974. After a mistrial on December 10, 1974, defendants were tried again on February 18 and 19, 1975. The jury returned a unanimous verdict of guilty as charged, and defendants were sentenced to serve thirty years at hard labor, without benefit of parole, probation or suspension of sentence. On this appeal four assignments of error are relied upon for reversal of the convictions and sentences.
Three persons, two men and one woman, participated in the armed robbery of the Nunez Bar and Restaurant during the early morning hours of May 30, 1974. The woman, Jo Ann Paul, turned State's evidence and testified in detail to the planning and execution of the robbery. She identified Ball and Thompson; all three were in turn identified by the victims and eyewitnesses to the crime. The fact of the robbery is not disputed, the defense being that the identifications were faulty and legally objectionable.

Assignment No. 1
In a motion and prayer for oyer defendants sought production and pre-trial inspection of 1) all technical reports or analysis of any objects found or obtained at the scene of the alleged offense which may be used against the defendants by the State; 2) a copy of any picture taken of the defendants at any line-up conducted during the investigation of this case which was in the possession of the State or law enforcement officers; and 3) a copy of any statement allegedly made by any witnesses or prospective witnesses that the State intended to use against the defendants at the trial.
The State responded that it was not required to furnish the information requested. When the matter came for hearing the trial judge ruled "that the State has satisfied the Prayer for Oyer as defined by the Laws of the State of Louisiana and the Rules of the Supreme Court interpreting that law." The ruling is correct. Just one year ago, with only one justice concurring, this issue was squarely met by the Court in State v. Collins, 308 So.2d 263 (La.1975), where it was held:
"As a general proposition the State is not required to produce the physical evidence it intends to use at the trial. Exceptions to this rule have recognized the right of a defendant to view and copy his written confession in the possession of the prosecutor, State v. Dorsey, 207 La. 928, 22 So.2d 273 (1945); to obtain production of a taped confession, State v. Hall, 253 La. 425, 218 So.2d 320 (1969); or some of the confiscated narcotic evidence in a narcotic prosecution, *83 State v. Migliore, 261 La. 722, 260 So.2d 682 (1970). When proper allegations support a finding that the defendant acted in self-defense and specifies that the weapon sought was used by the alleged victim against the defendant, supporting a claim of self-defense, we have required production of the weapon by the State. State v. Woodruff, 281 So.2d 95 (La.1973)."
This statement of the law was again approved by this Court in State v. White, 321 So.2d 491, on November 3, 1975.
In addition, according to Section 3 of Title 44 of the Revised Statutes the law does not require disclosure of records, or the information contained therein, held by offices of the attorney general, district attorneys, sheriffs, police departments, marshals, investigators, correctional agencies, investigative agencies, or intelligence agencies of the State pertaining to pending criminal litigation. State v. Rose, 271 So.2d 863 (La.1973); State v. Square, 257 La. 743, 244 So.2d 200 (1971); State v.Dickson, 248 La. 500, 180 So.2d 403 (1965); State v. Johnson, 249 La. 950, 192 So.2d 135 (1966), cert, denied, 388 U.S. 923, 87 S.Ct. 2144, 18 L.Ed.2d 1374.
The assignment of error has no merit.

Assignment No. 2
Prior to trial defendants filed a motion to suppress any identification evidence because certain pictures of defendants were shown to State witnesses under conditions that were unduly suggestive, in the absence of defendants or their counsel.
From the testimony of the State's witnesses at the hearing on the motion, it appears that they were first presented a large number of mug shots soon after the robbery and were unable to identify the defendants. Later, however, when the sheriff's deputies presented only three defendants, Salvador Campagna, a State witness who was then in the hospital with a wound received during the robbery, positively identified the defendants. On the other hand, when viewing more than twenty photographs out of court, the State's witness Anne Sue Gurganus, a cocktail waitress in the bar, identified two of the three individuals involved in the robbery, one of the men and the woman. Neither of these witnesses were called upon to view a police lineup composed of defendants and others with similar characteristics.
Although there is no showing to that effect, it may be inferred that Campagna's identification of the three participants from only three photographs, some time after the date of the robbery, was impermissibly suggestive because this action can be considered as a one-on-one photographic identification, a questionable practice under the circumstances. However, even if the out-of-court photographic identification was tainted, if the in-court identification had a source independent of the out-of-court identification, the in-court identification does not violate defendant's due process rights. State v. Moseley, 284 So.2d 749 (La.1973).
A review of the record satisfactorily establishes an independent source for the in-court identification unassociated with the out-of-court photographic identification. For instance, Campagna saw the three participants from the moment they entered the barroom and restaurant where the robbery occurred. Thompson and the woman ordered lunches, while Ball sat at the bar. Later, all three sat together at the bar for a while, then Ball and the woman pretended to play a coin machine. Finally, Ball grabbed Campagna by the collar, demanded his money and watch, shot him in the side, and made him lie on the floor. Meanwhile Thompson took a position at the entrance door. In addition to observing Ball and the woman at the bar and while they walked around the room, Campagna had an opportunity to obtain a lasting impression of Ball's physical characteristics during the close encounter with Ball while he was being handled, shot and *84 robbed. According to some of the testimony, the robbery lasted from ten to fifteen minutes.
Ball and Thompson were also identified by Anne Sue Gurganus, the cocktail waitress, and Earline Labat, who worked in the kitchen. Earline Labat had an excellent opportunity to observe one of them when he confronted her under a brighter light than the barroom light. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); State v. Peevy, 321 So.2d 324 (La.1975); State v. Allen, 251 La. 237, 203 So.2d 705 (1967).
The fact that no defense counsel was present at the time of the photographic identification is not disputed. Nevertheless, there is no merit to the defense allegation in the motion that his Sixth Amendment rights under the Federal Constitution were violated because, among other reasons, he was not represented by counsel at the pre-indictment photographic identification. The Federal Constitution's Sixth Amendment right to counsel does not require that defendant be represented by counsel at pre-indictment line-ups, photographic or otherwise. State v. Gilmore, 323 So.2d 459 (La.1975).
It is also noted that during the testimony of the three eyewitnesses, Anne Sue Gurganus, Earline Labat and Salvador Campagna, The State offered no evidence relating to the out-of-court identification, and the defense made no objection to the in-court identification. See State v. Moseley, 284 So.2d 749 (La.1973).
This assignment has no merit.

Assignment No. 3
Ralph Carreras had been a deputy of the St. Bernard Sheriff's office for nine years at the time of the trial. He testified that on the day of the robbery a green metal box was brought to the Sheriff's office by Detectives Boda and Lombardo, who were in charge of certain phases of the investigation of this robbery. He and Deputy Sanchez dusted the box for fingerprints and were able to lift several partial smudges and other prints which the transferred to cards initialed by him. He then sent the cards to the crime lab in Baton Rouge. On cross-examination he testified that he had had training in lifting fingerprints over the past years. Attendance at three police schools, one scientific investigation school and another relating to general law enforcement, at which he learned to lift fingerprints during short courses on the subject, were the extent of his formal training. He explained the technique by which fingerprints are lifted and the tools and material employed in the process. When asked how often he had performed the operation he estimated "five thousand times since I've been with the Department." He readily acknowledged, however, that he was unable to analyze the fingerprints when lifted, claiming no expertise in the classification of fingerprints.
When he identified the card of transferred fingerprints lifted from the green metal box, defense counsel objected that he had "no expertise in the discipline of taking fingerprints" and therefore he could not testify that the prints on the card were the prints he lifted from the green metal box. Upon inquiry by the court, the witness said he knew these to be the prints he lifted because his initials were on the cards. The defense objection was then overruled, and this ruling is the basis of this assignment of error.
There is no error in the ruling. Deputy Carrera's training and extensive experience over a period of nine years provided him with ample expertise to enable him to properly pereform the purely mechanical operation involved in lifting fingerprints. Admittedly he was not qualified to give expert opinion testimony involving the analysis and classification of fingerprints, and he was not called upon to do so. He satisfied the trial judge that his initials on the card to which the lifted fingerprints had been transferred were sufficient to permit the required identification.

*85 Assignment No. 4

Defendants contend that during the State's rebuttal argument the District Attorney made certain prejudical remarks within the hearing of the jury by referring to another crime, murder, for which defendants were not being tried.
By the testimony at the trial it is shown that Campagna was shot by Ball during the robbery and the bullet entered Campagna's right hip. During his closing argument to the jury, defense counsel said that Ball was different from those who composed the jury and he made comparisons, concluding that these differences should not influence their judgment.
In the course of his rebuttal argument to the jury the Assistant District Attorney declared:
"I just have a few comments. Mr. Tillery says Mr. Ball is different from you. I will concur wholeheartedly in that statement. Mr. Ball, the evidence has shown, is an armed robber and about two or three or four inches, possibly, away from being a murderer when he shot Mr. Campagna, and shot him in the blink of an eye."
When the defendant objected, the trial judge overruled the objection, giving as his reason that the Assistant District Attorney was "commenting on evidence". The ruling is correct. The remarks were, moreover, permissible rebuttal.
Ball's actions did place him on the brink of murder under the facts of this case, for had Campagna died as a result of the wound, the law would define the killing during the perpetration of an armed robbery as murder. La.R.S. 14:30. The comment on the evidence, then, was a rational one. But Ball was not charged with murder, and the State's argument does not say that he was, only that his conduct could have amounted to murder if the shot had been fatal. The jurors were undoubtedly aware of the fact that Ball would have been a murderer if Campagna had been killed. And there is little probability that the jury considered the remarks applicable to the defendant's case, except insofar as the remark pointed up the gravity of Ball's actions and how his actions were different from actions the jurors might be responsible for. As such, the argument does not transcend the liberality the law permits in the argument of counsel to the jury.
In our view this comment is similar to the remarks of the Assistant District Attorney in State v. Gilbert, 286 So.2d 345 (La.1973), appeal dismissed 420 U.S. 902, 95 S.Ct. 820, 42 L.Ed.2d 832 (1975):
"Why, of course, it is a serious offense. Mr. O'Corr could well not be here today. If anything had happened in that armed robbery, as it so often does, the person, the victim, is not here to testify."
Our decision in State v. Gilbert found that the remarks were hypothetical and they added no prejudice which did not already exist in the minds of the jurymen. The holding in the instant case is the same.
For the reasons assigned, the conviction and sentence are affirmed.
TATE, J., assigns additional concurring reasons.
DIXON, J., concurs with reasons.
CALOGERO, J., concurs with reasons.
TATE, Justice (concurring).
There may not have been reversible error, after the conviction, because of the failure to permit pre-trial discovery of the physical evidence. Nevertheless, the practice in many district courts of allowing it is salutary, not only in the interest of fair trial, but also of avoiding due process denials which, on post-conviction proceeding, *86 will cause the state conviction to be set aside. See Barnard v. Henderson, 514 F.2d 744 (C A 5, 1975).
Like my brother Dixon, however, I feel that dicta in the opinion is erroneous in implying that La.R.S. 44:3 justifies non-disclosure of police records as privileged.
The purpose of the public records act, La.R.S. 44:1 et seq., is only to recognize the right of any elector or taxpayer to examine and copy public records. La.R.S.44:31-33. To this right of public and open inspection at convenient time, a number of exceptions are made, such as records of investigative agencies, La.R.S. 44:3 (here in question), or of hospital agencies, La.R.S. 44:7.
However, the act does not and was not intended to create a privilege from production of such records for valid judicial purposes. We so held recently, in State v. Berry, 324 So.2d 822, 827 (1974), in rejecting a defendant's claim to privilege founded upon that statute. For similar reasons, the state likewise enjoys no privilege by reasons of the statute.
The chief purpose of the open-records law, Chapter 1 of Title 44, La.R.S., is to assure open public access to public records, with limited exceptions, such as for law enforcement investigative records. The latter exemption specifically applies only from this requirement of indiscriminate general public access: La.R.S. 44:3 provides only that "Nothing in this Chapter (which provides for such indiscriminate public access)" shall be construed to apply to such investigative records.
The majority is in error in inferring a privilege from production for judicial purposes of such records. When the interests of a fair trial or of constitutional requirements demand their disclosure in judicial proceedings, they must be produced.
DIXON, Justice (concurring).
I concur with the conclusion, but believe the reference to R.S. 44:3 is inappropriate.
R.S. 44:1 et seq. is the Louisiana Public Records Act. 44:3 exempts from the provisions of the act certain records (of investigative and prosecutorial offices) which pertain to pending criminal litigation. The Public Records Act is misinterpreted by the majority, and is irrelevant to the issues of this case.
CALOGERO, Justice (concurring).
I concur in the result although I am not in accord with the majority's treatment of assignment of error number one. R.S. 44:3 is not relevant to the issues in this case.