294 So.2d 211 (1974)
STATE of Louisiana
v.
Roger PAYTON.
No. 54177.
Supreme Court of Louisiana.
April 29, 1974.
*212 Murphy W. Bell, Director, Woodson T. Callihan, Jr., Trial Atty., Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Lennie F. Perez, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
Defendant, Roger Payton, was charged by Bill of Information with violation of R.S. 14:64, armed robbery. Defendant was found guilty by a twelve member jury on July 10, 1973.
On September 28, 1973, defendant was sentenced to be committed to the custody of the Louisiana Department of Corrections and confined for a period of twenty years at hard labor, to be served without benefit of parole, probation or suspension of sentence.
During these proceedings, defendant reserved three bills of exceptions, which he has perfected and now relies upon for a reversal of his sentence and conviction.

Bill of Exceptions No. 1
This bill was reserved when the trial judge allowed the robbery victim, Asa C. Bailey, to make an in-court identification of the defendant over a defense objection that the in-court identification was based on a prior line-up procedure suggestive of defendant's identity. Defendant cites Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), as authority for his proposition.
In Foster, a witness was shown the defendant in a line-up with two other individuals and could not make an identification. He then had a one-to-one confrontation with the defendant and still could not identify him. One week later, the witness was shown a second line-up in which the defendant was the only person appearing who had appeared in the first. The court found that the suggestive elements in that identification procedure made it all but inevitable that the witness would identify the defendant. "In effect, the police repeatedly said to the witness, `This is the man.'" 394 U.S. at 443, 89 S.Ct. at 1129, 22 L.Ed. 2d at 407.
In this case, two line-ups had been had on the day after the robbery. The witness viewed six persons in the first, not including the defendant. He placed several of the persons' numbers on the identification slip, together with written comments, but did not positively identify anyone. The second line-up was held about fifteen minutes later with four of the persons from the first line-up and with the defendant and one other person. All of the participants' relative positions and numbers were changed. The witness, Mr. Bailey, identified the defendant, Payton.
*213 Defendant contends that the effect of this procedure was to make the second line-up one composed of two persons, him, and the other individual not included in the first line-up, the result being that the line-up functioned either consciously or subconsciously as a suggestion to the witness that one of the two people substituted was the perpetrator of the offense.
We do not agree. While the line-ups employed by the police in this case were not the best that could have been devised, it cannot be said that they made it all but inevitable that the witness would identify the defendant. The witness indicated considerable indecision at both line-ups and testified that he became very frustrated that he could not make a positive identification. The identification of the defendant was based upon his height, voice and manner. Although the witness wrote on his identification slip "By God, I believe # 3 is it," he stated at the trial: "I still didn't say definitely." (Transcript p. 62). In this regard it should be noted that the witness testified that the conditions at the line-up made it difficult to make an identification. The elevation, mesh net, lighting, and distance combined to make the identification process a difficult and frustrating one.
As we stated in State v. Newman, 283 So.2d 756, 759 (La. 1973):
"Even if the out-of-court identification was tainted, if the in-court identification had a source independent of the out-of-court identification, the in-court identification does not violate defendant's due process rights. State v. Amphy, 259 La. 161, 249 So.2d 560, supra; State v. Richey, 258 La. 1094, 249 So.2d 143; United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)."
In State v. Moseley, 284 So.2d 749, 751 (1973), citing Newman, supra, we stated:
". . . that a determination of whether the witness' in-court identification was based upon an independent source involves these factors: (1) the prior acquaintance of the witness with the accused; (2) length of time the witness observed the perpetrator before, during and after commission of the offense; (3) the circumstances under which the observation was made. This would include illumination at the scene, the physical capacities of the witness and the emotional state the witness was in at the time of observation."
Though the witness, Mr. Bailey, was not acquainted with the defendant prior to the night of the robbery, defendant was in the witness' presence for approximately ten minutes. During this time, Mr. Bailey observed the defendant in well lit surroundings. Immediately prior to and during the actual commission of the crime the defendant was three feet from the witness. It is noteworthy that though the witness testified he was afraid and nervous, he also testified that he had the presence of mind not to give the robber any of the store's checks, only the paper currency and coin.
Bill of Exceptions No. 1 is without merit.
Bill of Exceptions No. 2
This bill was reserved when the trial court denied defense counsel's motion to inspect a report prepared by a police officer other than the testifying officer, which report had been used by the witness to refresh his memory outside of court.
The officer on cross-examination was asked about the address of an individual who had furnished information leading to the arrest of the defendant. The officer testified that the address was written on a rights waiver, and that the individual lived in the same house with another person involved in the crime. Thereupon, defense counsel asked whether the report was with the officer, and whether the officer used the report to refresh his memory. After the officer affirmatively answered the questions, defense counsel moved to inspect the report.
*214 The record clearly indicates that the officer only testified as to that which he actually knew and remembered. The officer used the report prior to trial to refresh his memory.[1] The evidence admitted was his present testimony. There was no right of the defense to inspect the report. The bill is without merit.
Bill of Exceptions No. 3
The third bill of exceptions was reserved to the scope of the prosecutor's cross-examination of the defendant while testifying during a hearing on the admissibility of a confession.
Out of the presence of the jury, the defendant was called as a witness on a limited point concerning an alleged oral confession. Defense counsel carefully restricted his questioning to a short period of time surrounding the defendant's arrest and alleged confession. However, in cross-examination, the prosecutor did not limit his questions to the defendant's purported confession. He questioned the defendant concerning other statements not alleged to form any part of the confession. The single purpose of the hearing out of the presence of the jury was to determine the admissibility of the confession.
The trial judge allowed the questioning complained of because he felt it went to the credibility of the witness and would aid in determining whether the confession was admissible.
We do not have to determine the correctness of the trial judge's ruling as the confession was not admitted into evidence and the testimony complained of was received out of the jury's presence. Further, if such were error, it was harmless error.
For the above assigned reasons, the conviction and sentence of the defendant, Roger Payton, are affirmed.
Affirmed.
BARHAM, J., dissents from determination under Bill of Exceptions No. 2.
TATE, J., also assigns additional concurring reasons.
TATE, Justice (concurring).
I concur with the majority opinion. However, I have some reservations as to our holdings on the Bill of Exceptions No. 2.
Under cross-examination, the testifying police officer admitted that he had used a report prepared by another officer to refresh his memory prior to trial. The better view, it seems to me, is that defense counsel (and the jury, in the event this became pertinent) should have the opportunity to inspect the report and to receive an explanation if testimony at the trial went beyond it or was contrary to it. I cannot see how the administration of justice would be thereby prejudicedto the contrary, the fine line between "refreshing memory" and "past recollection recorded", State v. Tharp, 284 So.2d 536 (La.1973), should be subject to judicial scrutiny rather than based upon the ex parte determination of the testifying witness himself.
However, under the present jurisprudence the defense was not entitled to see the report, upon the officer's testimony that he used it before the trial only to refresh his memory, and in the absence of further showing. Further, there is no claim by defense counsel at the time the bill was taken that the report was used *215 other than to refresh the officer's memory, and his testimony as it appeared in the record appears to be only his own recollection (except for the address) of what he actually saw, heard and observed.
For these reasons, I respectfully concur.
NOTES
[1] R.S. 15:279 provides,

"A witness may be allowed to refresh his memory by reference to his testimony given on the preliminary examination, or at a coroner's investigation, or on a previous trial, or, for the purpose of refreshing his present memory a witness may examine memoranda, and it is immaterial by whom or when the memoranda were made, provided that, after such inspection, the witness can testify to the fact."