352 So.2d 592 (1977)
STATE of Louisiana
v.
Freddie J. McZEAL.
No. 59072.
Supreme Court of Louisiana.
May 16, 1977.
Dissenting Opinion July 1, 1977.
On Rehearing November 14, 1977.
Rehearing Denied December 14, 1977.
*593 Gordie R. White, Porteus R. Burke, New Iberia, for defendant-appellant.
Robert Glass, Martzell & Montero, New Orleans, for defendant-appellant on rehearing.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Knowles M. Tucker, Dist. Atty., Dracos D. Burke, Asst. Dist. Atty., for plaintiff-appellee.
E. "Pete" Adams, Executive Director, Louisiana Dist. Attys. Assn., Baton Rouge, for amicus curiae.
MARCUS, Justice.
Freddie J. McZeal was charged by the grand jury in the same indictment with separate counts of aggravated rape in violation of La.R.S. 14:42 and armed robbery in violation of La.R.S. 14:64. Defendant was tried for both offenses in a single jury trial and was found guilty as charged for each offense by a unanimous verdict. He was sentenced to death for the crime of aggravated rape and to serve ninety-nine years at hard labor without benefit of parole, probation or suspension of sentence for the crime of armed robbery. On appeal, defendant relies on ten assignments of error for reversal of his convictions and sentences.[1]

ASSIGNMENT OF ERROR NO. 2
Defendant contends that the trial judge erred in denying his motion to quash the indictment. While defendant does not contest the fact that the offenses with which he was charged were based on the same transaction, he argues that a single indictment for aggravated rape and armed robbery contains a misjoinder of offenses under La.Code Crim.P. art. 493 since they are not triable by the same mode of trial. It is his contention that, because a unanimous verdict is required to return a conviction for aggravated rape while only ten out of twelve jurors must vote to convict a defendant of armed robbery, the offenses are not triable by the same mode of trial.[2] La.Const. art. 1, § 17 (1974); La.Code Crim.P. art. 782. On the other hand, it is the position of the state that, where both offenses are tried before a jury of twelve persons, they are triable by the same mode of trial and therefore they may properly be joined. In denying defendant's motion to quash, the trial judge accepted the state's interpretation of La.Code Crim.P. art. 493. After the completion of the closing arguments, he instructed the jury that a unanimous verdict would be required to convict defendant of aggravated rape while ten of the twelve jurors would have to concur in order to find him guilty of armed robbery. A unanimous jury found defendant guilty of both offenses.
The joinder of offenses is governed by La.Code Crim.P. art. 493, which provides:
Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the *594 offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
Since there is no dispute that these offenses were based on the same transaction, a resolution of the issue of whether their joinder was authorized by the above provision depends upon an interpretation of what is meant by the phrase "triable by the same mode of trial."
La.Const. art. 1, § 17 (1974) states in pertinent part:
A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. A case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months shall be tried before a jury of six persons, five of whom must concur to render a verdict.
See La.Code Crim.P. art. 782 for a similar statutory provision.
Because the crime of aggravated rape is a capital offense, it is tried before a jury of twelve persons.[3] La.R.S. 14:42. The crime of armed robbery for which punishment is necessarily confinement at hard labor is also tried by a twelve-member jury. La.R.S. 14:64. Since both of these offenses are triable by a jury of twelve persons, they are "triable by the same mode of trial" within the meaning of La.Code Crim.P. art. 493 irrespective of the difference between them as to the number of jurors needed to vote for conviction in order to render a verdict. Therefore, these offenses may be charged in separate counts of the same indictment where they are based on the same act or transaction. Such is the case before us. Furthermore, the trial judge carefully instructed the jury as to the difference between the offenses in the number of votes required to return a verdict of guilty and a unanimous verdict of guilty was returned for each offense. We therefore conclude that the indictment which charged defendant in separate counts with aggravated rape and armed robbery, offenses which were based on the same transaction, was proper and hence defendant's motion to quash was properly denied.
Assignment of Error No. 2 is without merit.

ASSIGNMENT OF ERROR NO. 3
Defendant contends that the trial judge erred in denying his challenge for cause of prospective juror Donald J. St. Germain who, on voir dire examination, expressed a personal prejudice against racial intermarriage and socializing with members of the black race. However, during the voir dire examination, the juror unequivocally denied that such prejudice would in any way interfere with his ability to render a fair and impartial verdict based upon the law and the evidence adduced at trial. Nevertheless, defendant contends that the juror's racial prejudice in the area of intermarriage and social encounters rendered the juror "not impartial," a proper ground upon which to exercise a challenge for cause under La.Code Crim.P. art. 797(2), and the denial of his challenge thereby prevented him from being tried by an impartial jury, a right guaranteed by the sixth amendment.[4]
*595 La.Code Crim.P. art. 797, in pertinent part, provides:
The state or the defendant may challenge a juror for cause on the ground that:
. . . . .
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence.
A prospective juror's negative opinions on racial intermarriage and social preferences do not necessarily reflect on his ability to judge fairly and justly, free from prejudice. State v. Reed, 324 So.2d 373 (La.1975); State v. O'Conner, 320 So.2d 188 (La.1975). Rather, the true test of a juror's qualification to serve is his ability to judge impartially based on the law and the evidence admitted at trial, as gleaned from the totality of his responses on voir dire examination.
A review of the record of the voir dire examination of the prospective juror indicates his ability to render a fair and impartial verdict. His comments as to his views on racial intermarriage and social preferences were isolated when compared with his other responses which demonstrated his ability to judge impartially. For this reason, defendant's challenge for cause was properly denied.
The assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 4
Defendant contends that the trial judge's ruling which permitted the introduction of evidence of offenses which occurred on October 18, 1974 was erroneous. He argues that the state is bound by the representation contained in its opening statement that the crimes were committed on August 18, 1974, and therefore evidence pertaining to offenses which were committed on any other date was inadmissible.
The context facts which give rise to defendant's objection are as follows. At one point in his opening statement, the district attorney inadvertently misstated the date of the offenses with which defendant was charged as August 18, 1974, rather than October 18, 1974. Of a total of six references to the date of the crimes contained in the district attorney's opening statement, only one was incorrect. Furthermore, the indictment indicated that the offenses of aggravated rape and armed robbery had been committed by defendant on October 18, 1974. When the state subsequently sought to introduce evidence that the crimes occurred on October 18, defendant objected to the evidence as beyond the scope of the state's opening statement. His objection was overruled.
La.Code Crim.P. art. 766 sets forth the purpose of the district attorney's opening statement:
The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge.
Where a defendant is sufficiently apprised of the nature of the charge and of the evidence by which the state expects to prove the charge, then the fact that an erroneous date is given for the offense is of no importance. State v. Brown, 288 So.2d 339 (La.1974). In the case before us, defendant was informed of the correct date of the offenses with which he was charged in the indictment. In his opening statement, the district attorney both prior and subsequent to the inadvertent error correctly stated that the crimes occurred on October 18, 1974. Therefore, since defendant was sufficiently apprised of the nature of the charge and the evidence against him, he did not suffer any prejudice from the unintentional error on the district attorney's part.
Assignment of Error No. 4 lacks substance.

ASSIGNMENTS OF ERROR NOS. 5 AND 8
Defendant contends that the trial judge erred in ruling that the in-court identifications *596 of six eyewitnesses and two alleged accomplices were admissible. He argues that the in-court identifications were inadmissible in that the state failed to lay a proper foundation before their admission into evidence and they were tainted by impermissibly suggestive out-of-court identifications made by the witnesses.
Charles LeBlanc, an employee of the clothing store where the offenses occurred, testified that about noon on October 18, 1974, defendant and two male companions entered the store and shopped around for about ten to fifteen minutes before leaving. About 3:00 p. m. on the same day, the three men returned to the store where LeBlanc was waiting on two customers, Brenda and Debra Landry. After looking over the merchandise for approximately fifteen minutes, one of the men asked LeBlanc to show him a pair of slacks located in the rear of the store. As LeBlanc proceeded to the back of the store, one of the three men ordered him as well as the two customers to put their hands up. LeBlanc was instructed to turn around and as he did so he saw defendant pointing a gun at him. He was then taken to the restroom in the rear of the store and told to lie face-down. Debra and Brenda Landry were likewise ordered at gunpoint by defendant to go to the back of the store and, after being placed in one of the dressing rooms, they were told to disrobe. About this time, two more shoppers, Donna Angeron and the rape victim, entered the store at which time they were grabbed by defendant and forced at gunpoint to walk to the rear of the building. Miss Angeron was instructed to lie on the floor of one of the dressing rooms while the rape victim was removed to a separate room where she was forced to disrobe and to lie on the floor. Defendant then raped the victim twice and struck her across her head. During the course of the rape, a fifth customer, Chris Lastrappe, entered the store and she witnessed defendant armed with a gun over the rape victim. Miss Angeron also was able to observe defendant rape the victim through an open space between the wall and the floor. All of the witnesses testified that the lighting in the store was good.
About a year after the crimes were committed, a lineup was conducted during which Charles LeBlanc, Brenda Landry and Donna Angeron identified defendants as one of the three perpetrators of the crimes. The rape victim was unable to identify defendant because of her highly distraught condition. Mugshots were also displayed to some of the witnesses, one of whom identified defendant and his two accomplices. At trial, defendant was identified by each of the six eyewitnesses as one of the perpetrators of the crimes. Objection was raised by defendant only to the in-court identifications while no attack was made on the out-of-court identifications.
Defendant's contention that the in-court identifications of the six witnesses were inadmissible because the state failed to lay a proper foundation prior to their admission into evidence is without merit. The testimony of the witnesses established that they were present during the commission of the offenses. This showing constituted sufficient foundation upon which to permit the introduction into evidence of the in-court identifications.
Furthermore, after a review of the record, we find no showing that the out-ofcourt identifications made by some of the witnesses were impermissibly suggestive or conducive to mistaken identification so as to deny defendant due process of law. The fact that one of the witnesses (Charles LeBlanc) may have been informed prior to his viewing the lineup that a suspect was in the lineup does not render the out-of-court identification impermissibly suggestive. State v. Knight, 323 So.2d 765 (La.1975); State v. Nance, 315 So.2d 695 (La.1975). Nor does a witness' failure to identify a defendant at a pretrial lineup render a later in-court identification inadmissible, for the failure to identify a suspect at a pretrial lineup is a matter which addresses itself to the weight of a witness' testimony rather than its admissibility. State v. Batiste, 318 So.2d 27 (La.1975).
But even if we assume arguendo that the out-of-court identifications were tainted, if *597 the in-court identifications had a source independent of the out-of-court identifications, then the in-court identifications do not violate defendant's due process rights. State v. Anthony, 332 So.2d 214 (La.1976); State v. Peevy, 321 So.2d 324 (La.1975); State v. Payton, 294 So.2d 211 (La.1974); State v. Moseley, 284 So.2d 749 (La.1973); State v. Newman, 283 So.2d 756 (La.1973); State v. Amphy, 259 La. 161, 249 So.2d 560 (1971); State v. Richey, 258 La. 1094, 249 So.2d 143 (1971).
In the instant case, the offenses were committed in a well-lighted store. Charles LeBlanc clearly saw defendant and his accomplices during their first visit to the store and recognized them when they subsequently returned. Defendant was viewed at close range by all six witnesses and each of the witnesses identified defendant as the armed participant in the offenses. In view of the totality of the surrounding circumstances, we are convinced that the in-court identifications were based independently upon the observations of the witnesses. Therefore, since the in-court identifications had a source independent of the out-ofcourt identifications they did not violate defendant's due process rights.
Defendant's attack on the in-court identifications by his two accomplices addresses itself to the credibility of their testimony which implicated him in the crimes rather than to the admissibility of their in-court identifications. The weight to be given a witness' testimony is an issue which must be determined by the finder of fact. State v. Stevenson, 323 So.2d 762 (La.1975). Accordingly, this assignment of error is without merit.
Because Assignment of Error No. 8 is related to the above assignment of error, it will be discussed in conjunction with it. Defendant contends that the trial judge erred in refusing to give a special jury charge requested by him which pertained to the in-court identifications of the witnesses. The requested instruction was an excerpt from the decision of State v. Newman, 283 So.2d 756 (La.1973), which outlined the factors to be considered in determining whether a witness' in-court identification was based on an independent source.
In his general charge to the jury, the trial judge instructed them that the burden was on the state to prove every element of the offenses beyond a reasonable doubt. Identification of the accused as the perpetrator of the crimes was one of the elements of proof required. To have given a special charge on the identification issue would have been improper in that it would have pinpointed this issue out of proportion with the other issues in this case. State v. Rose, 271 So.2d 863 (La.1973); State v. Richey, 258 La. 1094, 249 So.2d 143 (1971). Furthermore, the requested special charge would have required qualification, limitation, or explanation. La.Code Crim.P. art. 807. For these reasons, we conclude that the trial judge's refusal to give defendant's requested special charge was proper.
Assignment of Error No. 8 lacks substance.

ASSIGNMENT OF ERROR NO. 6
Defendant contends that the trial judge's ruling which permitted the admission in evidence of a gun was erroneous since it had not been properly identified as the weapon used during the commission of the aggravated rape and the armed robbery.
About one year after the crimes had occurred, a gun was recovered by the police from the trunk of a car belonging to Robert Lee Sonnier, one of the defendant's coworkers with whom he rode to work. Testimony revealed that defendant had asked Sonnier if he could borrow the keys to the car in order to place a brown paper bag inside of the vehicle. Sonnier testified that, although he did not actually see the contents of the bag, he knew that the bag contained the gun since defendant carried the weapon with him at all times. Later that day, the gun was retrieved by police from Sonnier's car and upon its removal, the gun was marked for identification and was stored in the evidence locker at the police station. At trial, four eyewitnesses and one of defendant's accomplices testified that the gun was similar in appearance to *598 the weapon used during the commission of the offenses with which defendant was charged. Over defendant's objection, the trial judge allowed the gun to be admitted in evidence.
Defendant's contention that the gun was not properly identified as the weapon used during the commission of the crimes is unfounded. The witnesses testified that the weapon was similar to that used in the armed robbery and the aggravated rape. Additionally, Sonnier connected defendant with the gun which was recovered from Sonnier's car and was properly stored by the police from that point until brought to court on the day of trial. Clearly, it was more probable than not that the weapon was related to the case and therefore the trial judge properly permitted its introduction in evidence. Lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. State v. Freeman, 306 So.2d 703 (La.1975). Hence, there is no merit to Assignment of Error No. 6.

ASSIGNMENT OF ERROR NO. 9
Defendant was sentenced to death for his conviction of aggravated rape. He contends that this sentence must be set aside in view of the decision by the United States Supreme Court in Selman v. Louisiana, 428 U.S. 906, 96 S.Ct. 3214, 49 L.Ed.2d 1212 (1976), which declared unconstitutional Louisiana's mandatory death penalty for aggravated rape. Since Selman cases where defendants have been convicted of aggravated rape and sentenced to death, this court under the mandate of Selman has set aside and vacated the death sentences but, finding no reversible error, has affirmed the convictions. For the reasons set forth in State v. Craig, 340 So.2d 191 (La.1976), State v. Lee, 340 So.2d 180 (La.1976), and State v. Sledge, 340 So.2d 205 (La.1976), we have remanded the cases to the trial court for resentencing of defendants to the most serious penalty for a lesser included offense at the time of the commission of the crime. At the time of the commission of the present offense (October 18, 1974), attempted aggravated rape was punishable by imprisonment at hard labor for not more than twenty years while the crime of simple rape carried a penalty of imprisonment at hard labor for not less than one nor more than twenty years. The legislature obviously intended to impose the most serious penalty available under the law. Thus, if we find no reversible error in this case, we will affirm the conviction but will remand the case for resentencing of defendant to the most serious penalty for the next lesser included offense which is twenty years at hard labor.

ASSIGNMENT OF ERROR NO. 10
Defendant contends that the trial judge erred in denying his motion for a new trial in which he asserts that a new trial is warranted on two grounds. First, he argues that a new trial should have been granted since inadmissible evidence was improperly permitted to be introduced at trial. This argument reasserts allegations previously reviewed in Assignments of Error Nos. 4, 5 and 6. For the reasons expressed therein, this contention lacks substance.
Next, defendant argues that a new trial should have been granted under La.Code Crim.P. art. 851(4) when it was discovered that at least two members of the jury had read local news accounts of the trial during their deliberation. The reading of these news releases, he contends, was prejudicial to him and furthermore violated La.Code Crim.P. art. 793, which prohibits a juror from referring to notes or from having access to any written evidence.
Attached to defendant's motion for a new trial is an affidavit by defense counsel asserting that the prejudicial error was not discovered by defendant "until informed thereof during the jury's deliberation." Despite this fact, defendant did not object or move for a mistrial prior to verdict. Rather, objection was first asserted in his motion for a new trial. Defendant's failure to raise the alleged prejudicial error or defect in the proceedings prior to the verdict contravenes the terms of articles 851 and 855 of the Code of Criminal Procedure, *599 which allow the defendant to raise an alleged error or defect in the proceedings in a motion for a new trial only if it appears that, notwithstanding the exercise of reasonable diligence by the defendant, the error or defect was not discoverable before the verdict. Hence, the alleged error could not be raised in a motion for a new trial. Additionally, article 841 provides that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. State v. Martin, 316 So.2d 740 (La.1975). Moreover, in denying defendant's motion, the trial judge assumed that the articles had in fact been read by at least two of the jurors but concluded that the articles were unbiased accounts of what had occurred in the courtroom in the presence of the jury and therefore were not prejudicial to defendant. The judge also noted that the jury had been instructed to decide the issue of guilt or innocence solely on the basis of the evidence presented in the courtroom and the verdict, in his opinion, fairly reflected a finding based on that evidence. The trial judge did not err in denying defendant's motion for a new trial.
In sum, Assignment of Error No. 10 is without merit.

DECREE
For the reasons assigned, the conviction and sentence for armed robbery are affirmed. The conviction for aggravated rape is affirmed and the case is remanded to the district court for resentencing of defendant for the offense of aggravated rape.
DIXON, J., concurs, disagreeing with assignment # 8.
DENNIS, J., dissents, and will assign reasons.
DENNIS, Justice, dissenting.
In light of the rehearing which has been granted in this case I will not file written reasons for disagreement with the original majority opinion.

ON REHEARING
DENNIS, Justice.
A rehearing was ordered in this case to reconsider the question of whether capital and non-capital offenses may be joined for trial.[1] For insight into how the present joinder rules should be applied we turn to the prior statutes and case law.
Before the adoption of the Code of Criminal Procedure of 1928, this Court followed the common law rule which permitted joinder of separate offenses arising out of the same criminal act or a continuous unlawful transaction. Such joinder, however, was further restricted by the requirement that the offenses must be subject to the same mode of appeal, State v. Nejin, 139 La. 912, 72 So. 452 (1916), and triable by the same type of jury. State v. Hataway, 153 La. 751, 96 So. 556 (1923).
In Hataway, the defendant was prosecuted for burglary and grand larceny, was tried by a jury of twelve, and was convicted of petty larceny. Because larceny was triable under Article VII, § 41 of the 1921 Louisiana Constitution by a jury of five, or by judge, whereas burglary was triable only by a jury of twelve, the court reasoned that "the prosecution for the two offenses charged is not subject to one or the same method of procedure, or triable by the same tribunal or tribunals." Id. p. 759, 96 So. p. 559.
In 1928, as part of Louisiana's first Code of Criminal Procedure, the legislature enacted the following provision:
"When two or more crimes result from a single act, or from one continuous unlawful transaction, only one indictment will lie; but each of said distinct crimes, though some of them be felonies and others of them misdemeanors, may be separately charged in distinct counts in the same indictment." La.C.Cr.P. art. 218 (1928).
*600 In State v. Jacques, 171 La. 994, 132 So. 657 (1931), this Court declared Article 218 unconstitutional as being in conflict with the provisions of the state constitution relating to the trial of capital and non-capital felonies. The offenses charged in the single indictment were murder and robbery. Under Article VII, § 41 of the 1921 Louisiana Constitution both offenses were triable by twelve-person juries, but the former, being a capital offense, required a unanimous verdict, while the latter required that only nine jurors concur in a verdict. In declaring that the joinder of these offenses abridged the defendant's state constitutional rights, we stated:
"The Constitution of the state has provided different tribunals for the trial of capital offenses, offenses necessarily punishable by imprisonment at hard labor, etc., and such procedure necessarily constitutes due process of law, and cannot be changed in any class of cases by a mere act of the Legislature." (Emphasis supplied). Id. p. 999, 132 So. p. 658.
The Jacques decision was later distinguished in State v. White, 172 La. 1045, 136 So. 47 (1931) which approved the joinder for trial of two murder indictments. This Court held that Article 218 was not unconstitutional insofar as it pertained to joinder of offenses triable by the same type of tribunal, and explained:
In the case at bar the two murders with which defendant is charged resulted from one continuous unlawful transaction; they are offenses of the same nature; they are triable by a jury of twelve, all of whose members must concur to render a verdict of guilty as charged, or to return a verdict of not guilty; and they are offenses punishable alike by the same or a similar judgment.
"It is clear, therefore, that no constitutional objection can be urged against the inclusion in one indictment in separate counts of two murders, or other crimes of the same nature, when such crimes result from one continuous unlawful transaction, and are triable and punishable alike." 136 So. at 48. (Emphasis supplied).
The principal rule of the 1966 Code of Criminal Procedure governing joinder of offenses, Article 493, generally prohibited joinder, subject to a few narrow statutory exceptions. Article 493, as originally enacted, provided:
"No indictment shall charge more than one offense, except as otherwise provided in this Title, but the same offense may be charged in different ways in several counts."
In 1975 the Louisiana legislature radically departed from the previous general rule that joinder of offenses within an indictment was impermissible. By Act 528 of 1975, Louisiana Code of Criminal Procedure Article 493 was amended to read as follows:
"Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial." (Emphasis supplied).
Except for the italicized portion of Article 493 quoted above, the enactment substantially tracks the language of Federal Rule of Criminal Procedure 8(a).[2] The concluding proviso making joinder contingent upon the joined offenses being subject to the same mode of trial was adopted by the legislature as a House committee amendment. See, Official Journal of the Louisiana House of Representatives, 1975, Vol. 1, p. 1242. This modification of the federal rule language evinces an affirmative intent on the part of the legislature to limit the application of the joinder provision to a narrower class of cases than those provided for in the federal system. It is the interpretation *601 of the phrase "same mode of trial," which has led to the instant controversy.
It is readily apparent that the words "same mode of trial" could refer to more than one logical method of classifying trials in criminal cases. Article I, § 17 of the Louisiana Constitution of 1974,[3] suggests four classes of trials: trial before a judge only; trial before a jury of six persons, five of whom must concur to render a verdict; trial before a jury of twelve persons, ten of whom must concur to render a verdict; and trial before a jury of twelve persons, all of whom must concur to render a verdict. These classifications are based upon both the character of the trier of fact and the requirement for reaching a verdict. By selecting different criteria, other classes of trials could be devised: if one focused on the presence or absence of a jury, there would be two modes of trial: non-jury and jury; if one focused on the number of triers of fact, there would be three modes of trial: judge, six-person jury, twelve-person jury.
The State asserts that the legislature intended that trials should be divided into three categories according to the number of triers of fact. In support of this argument, it points out that a major purpose of the modification of the joinder rule was to promote efficiency within the criminal justice system by expanding the instances in which joinder is allowed. Further, the State reasons that in case of a prejudicial joinder a defendant may obtain a severance of offenses before trial if "it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense." La.C.Cr.P. art. 495.1.
The premises advanced by the State are correct, but they do not support its interpretation of the crucial statutory language. Certainly, the ultimate thrust of Article 493 serves to enlarge the ambit of joinder, but the requirement that "the offenses joined must be triable by the same mode of trial" is obviously a countermeasure designed to narrow its scope somewhat. This wording and other deletions[4] from the verbiage borrowed from the legislature's source text, Federal Rule of Criminal Procedure 8(a), indicate clearly that the legislature did not intend to sanction cumulation of offenses to the extent possible in the federal system. It also suggests that the legislature was not unmindful of the fact that the policy of trial convenience in criminal procedure must yield in some instances to the overriding mandate that the defendant be given a fair and impartial trial. In discussing Federal Rule of Criminal Procedure 8, Professor Moore has stated:
"In liberal joinder the convenience is usually that of the prosecutionnot simply convenience in presentation of proof, but convenience in obtaining convictions as well. Few will deny that there is a positive correlation between the number of defendants and offenses cumulated within a single trial, and the likelihood of conviction. The form which joinder takes gives rise to many questions of substance. . . [I]n joinder what is `modern' is often at odds with the goal of `fairness in administration' * * *." 8 Moore's Federal Practice ¶ 8.02[1].
The State's argument that "mode of trial" should be defined broadly because a defendant may seek a severance as relief from a prejudicial joinder of offenses fails to recognize the difference between a misjoinder and a permissible but prejudicial *602 joinder. Under the Code of Criminal Procedure, when offenses are not properly joinable under Article 493, the defendant has a right to have the indictment quashed. La.C.Cr.P. art. 495. In contrast, if the offenses are joinable, but the joinder is prejudicial, a defendant is only entitled to seek a severance, which shall be granted before trial "if it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense." La.C.Cr.P. art. 495.1(a). Thus, Article 493 may be said to contain a built-in standard of prejudice which simply means that any form of joinder not permitted by the terms of the article is conclusively prejudicial.[5] This leaves a large area outside the protection of Article 493, an area in which a severance under Article 495.1 is available, but an area in which a defendant is required to show that a severance "is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense." See State v. Carter, 352 So.2d 607 (La.1977). The State's argument, therefore, is faulty because it assumes the answer and works backwards. The first question that must be answered is whether Article 493 permits joinder of capital and non-capital offenses. Only then can it be determined which is the defendant's proper remedy, a motion to quash or a motion to sever.
Thus, the question remains, what did the legislature intend by providing that joined offenses must be "triable by the same mode of trial?" In our past decisions, of which the drafters of the legislation were aware, this Court clearly indicated that it considered there to be four distinct kinds of criminal trials, as suggested by Article VII, § 41 of the 1921 Louisiana Constitution. Criminal cases in which the crime may be punishable with or without hard labor were distinguished from other cases as not being triable by "the same method of procedure" or by "the same tribunal." State v. Hataway, supra, 96 So. at 559. Subsequently, cases in which the punishment may be capital were distinguished from non-capital cases as "not triable in the same manner" but triable before "different tribunals." State v. Jacques, supra, 132 So. at 658. On the other hand, this Court referred to the trial of two capital crimes as being "triable and punishable alike." State v. White, supra, 136 So. at 49. The language and the holdings of these cases indicated that for purposes of permitting joinder of offenses there were four kinds of trials based on the categories established by Article VII, § 41 of the 1921 Louisiana Constitution, viz., trials of capital offenses; trials of non-capital, necessarily hard labor offenses; trials of crimes punishable with or without hard labor; and judge trials. Since Article I, § 17 of the 1974 Louisiana Constitution continues the same categories of trials, it is very probable that the 1975 legislation requiring that "offenses joined must be triable by the same mode of trial" stems from the joinder considerations first expressed in the Hataway and Nejin cases and later given state constitutional dimensions in the Jacques and White decisions.[6]
We are aware that the analysis set forth in Jacques has been criticized[7] and that the other cases do not deal specifically with the issue of whether joinder of capital and non-capital offenses is permissible. Nevertheless, the "same mode of trial" proviso reflects a probable intent to either codify the rule expressed in the language of these opinions or at least to avoid the constitutional problems therein discussed. In the unlikely event that the legislature intended to overrule the Jacques case, which was decided on constitutional grounds, it probably would have stated specifically that capital and non-capital offenses may be joined. Moreover, since our lawmakers have recognized in other areas that due process requires rigorous procedural safeguards for defendants in capital cases,[8] we *603 think a legislative aim to permit the trial of capital and non-capital cases before the same jury would have been expressed in more definite terms. Furthermore, the fact that the constitution itself places capital cases in a singular category by requiring a unanimous verdict suggests the need for very explicit language in any statute which attempts to set up a scheme at variance with this classification.
For these reasons we conclude that the legislature, by requiring that offenses joined for trial be triable by the same mode of trial, had reference to the four modes of trial indicated by Article I, § 17 of the 1974 Louisiana Constitution, viz., trial by judge, trial by jury in cases in which the punishment may be with or without hard labor, trial by jury in cases in which the punishment necessarily is with hard labor, and trial by jury in cases in which the punishment may be capital. We pretermit, as being unnecessary to our decision in this case, any discussion of whether a statute enacted with the clear intention to sanction the joinder of capital and non-capital offenses for trial would be in conformity with our state constitution.
Alternatively, the state contends that the joinder was harmless error under the circumstances of this case. It points out that the armed robbery and the aggravated rape were part of a continuous offense, and that the evidence on the trial of either would be admissible insofar as the other formed part of the res gestae. Since the death penalty for aggravated rape has been held invalid by the United States Supreme Court, Selman v. Louisiana, 428 U.S. 906, 96 S.Ct. 3214, 49 L.Ed.2d 1212 (1976), the State argues, the defendant can hardly complain of what turned out to be the routine joinder of two offenses each necessarily punishable by confinement at hard labor.
The State relies on the case of State v. Peters, 298 So.2d 276 (La. 1974), in which a majority of this Court held that the defect of misjoinder is not jurisdictional and that defendant's failure to object to proceeding to trial on improperly joined offenses constituted a waiver since this objection must be raised by a timely motion to quash. In separate opinions other members of the Court noted disagreement with the decision that the defect could be waived, but indicated that it amounted to harmless error under the circumstances of the case. The State also cites La.C.Cr.P. art. 921 and federal authorities as general guides for finding harmless or non-prejudicial error.
The State's reliance on these arguments and authorities is misplaced.
Under the joinder-quash-severance scheme of the code of criminal procedure any improper joinder under Article 493, as amended by Act 528 of 1975, is conclusively presumed to be prejudicial or harmful. As under Federal Rule of Criminal Procedure 8(a) which is the primary source of our present Article 493, this means that where the trial judge determines that offenses have been misjoined, he has no discretion to deny relief. Similarly, when an appellate court is faced with a decision below erroneously sustaining joinder, it should reverse and order separate trials.[9] The reasons for the rule have been explained by Professor Wright, as follows:
"* * * Indeed there would be no point in having Rule 8 if the harmless error concept were held applicable to it. If that concept could be applied, then defendant could obtain reversal only if the joinder were prejudicial to him. But Rule 14 provides for relief from prejudicial joinder, and a defendant can obtain reversal, in theory at least, if he has been prejudiced even though the joinder was proper. If misjoinder can be regarded as harmless error, then reversal could be had only for prejudice whether the initial joinder was proper or improper. If that were true, it would be pointless to define in Rule 8 the limits on joinder, since it *604 would no longer be of significance whether those limits were complied with, and the draftsmen would have been better advised to allow unlimited joinder of offenses and defendants, subject to the power of the court to give relief if the joinder were prejudicial. They did not follow such a course, and the cases seem quite right that hold that misjoinder can never be harmless error." 1 Wright, Federal Practice and Procedure, § 144 (1969).
The overwhelming weight of federal authority supports the view that if joinder is improper, severance is not a mere matter of discretion, and that joinder cannot be regarded as harmless error.[10] Since our joinder procedure is based upon the federal rule these authorities are very persuasive precedents. Moreover, our legislature has explicitly declared in Article 495 that the defendant has the right to have an indictment quashed which improperly joins offenses. In view of the foregoing and the state constitutional dimensions which have been accorded to the prohibition against joinder of capital and non-capital offenses by our jurisprudence, we conclude that such an improper joinder cannot be considered as non-prejudicial or harmless error under Louisiana law.
The decision relied on by the State, State v. Peters, supra, dealt with Article 493 before it was amended to substantially incorporate the federal joinder rule and to provide that joined offenses must be triable by the same mode of trial. Furthermore, the case involved a defendant's failure to object timely to proceeding to trial on misjoined offenses; in the instant case the defendant timely filed a motion to quash thereby objecting to the improper joinder of the offenses.
Aside from the logic of the statutory scheme, other considerations prompt us to presume, in the absence of clear statutory language to the contrary, a legislative intent to designate as conclusively prejudicial the joinder of a capital offense with other offenses for trial. In the case of such a misjoinder, a member of a jury who would vote to acquit the defendant of the capital offense if it were tried separately, would be under greater pressure to convict once the required number had reached a guilty verdict on the non-capital offense. The trial of a defendant on both capital and non-capital charges could induce a jury to convict on the non-capital charge as a compromise verdict, whereas the same jury might not convict if either charge were tried separately. The selection of a jury for trial of a capital case, because of the additional grounds for challenge for cause afforded the state,[11] arguably tends to result in a jury which is more readily persuadable of a defendant's guilt than juries selected for non-capital cases. Due to these concerns and others less articulable, there is a basic sense of justice which is affronted by the spectacle of a human being on trial for his life who is forced to divide his energies in defending against other crimes.
In the ultimate analysis, however, the State argues, if capital and non-capital offenses may not be joined, the defective joinder in the instant case was cured by the abrogation of the death penalty for aggravated rape with the decision of the United States Supreme Court in Selman v. Louisiana, supra. In effect, the State contends that since the crime of aggravated rape has been de-capitalized it may be tried by the same mode of trial as other non-capital *605 hard labor felonies. However, in similar circumstances when the imposition and execution of a statutory death penalty has been judicially reprobated, we have held that the crime and procedural devices applicable to the conduct punishable by the statute remain intact. State v. Whatley, 320 So.2d 123 (La.1975); State v. Flood, 263 La. 700, 269 So.2d 212 (1972); State v. Holmes, 263 La. 685, 269 So.2d 207 (1972). It follows, therefore, that the defendant's right to all of the procedural safeguards which accompany a capital charge remained intact. These necessarily included his right to be tried before a jury of twelve, all of whom must concur to render a verdict, and his right to have quashed an indictment joining this offense with another offense not triable by the same mode of trial. Consequently, the misjoinder of offenses in this case was not cured or rendered benign by Selman.
For these reasons we are convinced that the violation of Article 493 and the error in the instant case was not a mere technicality. It was an impermissible, conclusively prejudicial, joinder, to which the defendant timely and properly objected. Under these circumstances, the error must be recognized as "prejudicial to the substantive rights of the accused [and] a substantial violation of a . . . statutory right." La.C.Cr.P. art. 921.
Accordingly, the convictions and sentences of the defendant are reversed and the cases are remanded for separate trials.
SANDERS, C. J., dissents, adhering to the majority views on original hearing.
SUMMERS, J., dissents and adheres to the views expressed in the original opinion.
MARCUS, J., dissents for reasons expressed in original opinion.
NOTES
[1] Defendant has neither briefed nor argued Assignments of Error Nos. 1 and 7. Therefore, we consider these assignments of error to have been abandoned. State v. Blanton, 325 So.2d 586 (La.1976); State v. Carlisle, 315 So.2d 675 (La. 1975).
[2] In brief and oral argument, defendant has cited several cases which he contends support his position that the same mode of trial requires not only that the jury panel consist of the same number of jurors but also that a similar number of votes be required in order to render a verdict. State v. White, 172 La. 1045, 136 So. 47 (1931); State v. Jacques, 171 La. 994, 132 So. 657 (1931); State v. Hataway, 153 La. 751, 96 So. 556 (1923); State v. Nejin, 139 La. 912, 72 So. 452 (1916). These cases differ in their factual situations as well as in the legal principles and statutory provisions which governed at the time when they were decided. They are clearly distinguishable from the instant case.
[3] Although the United States Supreme Court in Selman v. Louisiana, 428 U.S. 906, 96 S.Ct. 3214, 49 L.Ed.2d 1212 (1976), struck down the death penalty in Louisiana, the invalidation of the death penalty did not affect the classification of aggravated rape, La.R.S. 14:42, as a capital offense and the procedural provisions for trying a capital case. See State v. Rhymes, 284 So.2d 923 (La. 1973).
[4] Since defendant exhausted his peremptory challenges prior to the completion of the jury panel, his objection to the ruling of the trial judge in which the judge denied the challenge for cause is properly before his court. La.Code Crim.P. art. 800.
[1] For an excellent discussion of the history of joinder of offenses in Louisiana, as well as a statutory analysis and construction contrary to that adopted herein, see Kelly, Joinder of Offenses: Louisiana's New Approach in Historical Perspective, 37 La.L.Rev. 203 (1976).
[2] The language of Federal Rule 8(a) which allows cumulation of "felonies or misdemeanors or both," was altered by the legislature's deletion of the words "or both."
[3] Article I, § 17 of the Louisiana Constitution of 1974 provides:

"A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. A case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months shall be tried before a jury of six persons, five of whom must concur to render a verdict. The accused shall have a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily. The number of challenges shall be fixed by law. Except in capital cases, a defendant may knowingly and intelligently waive his right to a trial by jury.
[4] See Footnote 2, supra.
[5] See, 8 Moore's Federal Practice ¶ 8.02[1].
[6] See, Kelly, Joinder of Offenses: Louisiana's New Approach in Historical Perspective, 37 La. L.Rev. 203, 223 (1976).
[7] Id. at 224.
[8] See, e.g., La.C.Cr.P. arts. 382 (requiring that prosecution in a capital case be commenced by indictment); 512 (requiring that appointed counsel in capital cases have been admitted to the bar for five years); 557 (requiring the court to refuse a defendant's unqualified guilty plea in a capital case); 791 (requiring jury sequestration in capital cases).
[9] 8 Moore's Federal Practice ¶ 8.04[2].
[10] McElroy v. United States, 164 U.S. 76, 17 S.Ct. 31, 41 L.Ed. 355 (1896); Metheany v. United States, 365 F.2d 90 (9th Cir. 1966); Cupo v. United States, 123 U.S.App.D.C. 324, 359 F.2d 990 (1966); cert. denied, 385 U.S. 1013, 87 S.Ct. 723, 17 L.Ed.2d 549 (1967); King v. United States, 355 F.2d 700 (1st Cir. 1966); United States v. Spector, 326 F.2d 345 (7th Cir. 1963); Ward v. United States, 110 U.S.App. D.C. 136, 289 F.2d 877 (1961); Ingram v. United States, 272 F.2d 567 (4th Cir. 1959); United States v. Marionneaux, 514 F.2d 1244 (5th Cir. 1975); United States v. Graci, 504 F.2d 411 (3d Cir. 1974); Contra, Baker v. United States, 131 U.S.App.D.C. 7, 401 F.2d 958 (1968), on remand, 301 F.Supp. 973 (D.D.C.1969), affirmed, 139 U.S.App.D.C. 126, 430 F.2d 499 (1970)), cert. denied, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970); United States v. Granello, 365 F.2d 990 (2d Cir. 1966).
[11] La.C.Cr.P. art. 798(2).